TOWN OF ALBION v. VILLAGE OF MAPLE LAKE.[1]

February 14, 1898.

Nos. 10,910—(270).

**Care of Poor—Town System—Amendment of Special Law—Judicial Notice—Evidence.**

Where the general law recognizes and amends the special laws relating to counties having the town system of caring for its poor, the court has the right to take judicial notice of such special laws, especially where they affect the rights of all persons in any one or more counties, and apply to the people generally; and such special laws are also admissible in evidence to show that a certain county was under the town system of caring for its poor.

[1] Reported in 74 N. W. 282.

Residence of Pauper—Evidence—Intention—General Reputation.

In an action against a village corporation to enforce its liability for refusal to care for its poor under the town system, it is competent for the pauper, cared for elsewhere, to testify directly as to the place he intended as his home or residence. But *held*, further, that evidence of general reputation tending to prove his place of residence, in order to create such liability against the village, was inadmissible.

Appeal by defendant from an order of the district court for Wright county, Russell, J., denying its motion for a new trial after a verdict for the plaintiff for $277.28. Reversed.

*Wendell & Pidgeon, W. E. Culkin* and *J. E. Madigan,* for appellant.
*J. J. Woolley* and *J. T. Alley,* for respondent.

BUCK, J.

The plaintiff is a town, and the defendant is a village, in Wright county, in this state. The question involved in this action is whether the defendant village is liable for the support of one George Lindmark, a pauper, who for eight or ten years had been a resident of said county.

He was taken sick about February 17, 1895, while sojourning in the town of Albion, and was too ill to be removed to the defendant village, which, it is alleged in the complaint, was his residence. Lindmark was destitute and helpless, and, by reason thereof, the plaintiff employed one Larry Smith to care for and support him, and also furnished him with medicine. The plaintiff duly notified the defendant of Lindmark's condition, and requested it to provide and care for him, upon the ground that he was a resident of said defendant village, but it refused so to do. Lindmark did not have relatives of sufficient pecuniary ability who could be legally chargeable with his support. The plaintiff town was still supporting Lindmark when this action was commenced, in the month of April, 1896, and it presented its claim to the defendant for such support and care of Lindmark.

1. One of the grounds upon which defendant refused to pay the bills was that, when the same were presented to the plaintiff, they were not itemized, and a certificate attached thereto, as required by law. We think this objection was not well taken. The provision of the statute requiring claims to be itemized is for the

benefit of the town paying the same, and does not concern the defendant. The plaintiff had to prove its claim against the defendant in accordance with the general rules of evidence, and defendant cannot take advantage of the fact that plaintiff paid the bills of those who furnished board, medicine, and care to this pauper without their being properly itemized.

2. The defendant objected to the introduction in evidence of Sp. Laws 1878, c. 215, and Sp. Laws 1887, c. 90, its objection being based upon the proposition that they were repealed by Laws 1889, c. 170, § 15, and that the subject of the support of the poor in Wright county is now governed exclusively by this general law. In view of the provisions of said section 15 of the general law, the prior special laws were, in any view of the case, competent to show that Wright county was under the "town system." If competent for any purpose, there was no error in admitting them.

It is to be noted that, upon the law of settlement, the court instructed the jury in accordance with the general law. This general law (Laws 1889, c. 170), in several of its sections specifically confers on the boards of supervisors of the several towns, and the common councils of the several incorporated cities and villages, of the counties having the town system of caring for the poor, numerous powers and duties, such as employing a suitable and competent physician to attend the poor. Such boards are also required to care for the poor, and remove them, under certain circumstances, to the county, town, city, or village where they have a legal settlement. Section 6 of said general law (G. S. 1894, § 1977) reads as follows:

"The general laws of the state, as to the residence of poor persons in order to obtain aid from counties, shall apply to the residence of poor persons in towns and incorporated cities and villages in counties which shall have adopted the town system of caring for the poor. *Provided*, that if any poor person shall have resided within any county continuously for one (1) year, but has not resided within any town, city or village therein continuously for one (1) year, he shall be entitled to relief from that town, or that incorporated city or village wherein he has resided for the longest period of time within the year preceding his application for relief."

The general law recognizes and amends all of the special laws relating to counties having the town system of caring for the poor, and hence the court had the right to take judicial notice of the special laws, whether introduced in evidence or not. A strong reason for this is found in the fact that the special laws so offered in evidence affected the rights of all the people in Wright county, and to them they applied generally. This is another ground upon which the special laws were admissible.

It is also assigned as error that the trial court permitted Lindmark to testify as to his intention to make the village of Maple Lake his residence or home. Of course, his intention to make such village his home or residence without the act of his actually residing there would be of no avail. While recognizing the distinction between "domicile" and "residence," and that they are not synonymous terms, and that the act and intent must combine to constitute "domicile" in the strict meaning of that word, yet we think that the words "legal residence of poor persons," as used in the statute with reference to caring for the poor, implies both the act and intent on the part of the pauper in order to create a liability on the part of the county, town or municipal corporation whose duty it is to care for the poor. See Lawson v. Adlard, 46 Minn. 243, 48 N. W. 1019, as to the construction put upon the meaning of the word "resident."

The most material fact in this case was to prove on the part of the plaintiff that Lindmark's residence was in the village of Maple Lake. Whenever the intention of any person is a material fact to be proved, direct testimony of such person, whether a party to the action or not, as to what such intention was, is competent. Garrett v. Mannheimer, 24 Minn. 193. Whether Lindmark's actual residence had been in the village of Maple Lake was a question properly submitted to the jury, as the evidence was sharply conflicting, and hence the finding of the jury upon that subject ought not to be disturbed.

The trial court also, against defendant's objection, received evidence tending to prove that Lindmark's reputed place of residence during a time which would create a liability on the part of defendant was in said village of Maple Lake.  ,

Residence is frequently a question of vital importance, not merely to the individual, but to the government itself. A person's rights and duties as a citizen are concerned in the determination of this question, and the obligations and functions of the government of the state and its municipalities are materially involved. In this case Lindmark had no home of his own, but the evidence shows that for several years he had been a resident of Wright county. He was a sort of floater, going around and working wherever he got a job of work, but, as the evidence tends to prove, whenever he was out of work, he came back to the village of Maple Lake, which he called his home, and boarded with some one there, or boarded himself in a shanty which he constructed in the village.

Now, while we think that his direct testimony as to his own intent in making Maple Lake his home or residence was admissible, we are of the opinion that hearsay evidence or testimony as to his reputed place of residence was inadmissible. People living at his alleged place of residence might properly testify as to acts of the party within their own knowledge which might constitute elements tending to establish residence; but what people said to each other tending to establish residence would be hearsay, and, as such, should be excluded when offered for the specific purpose of creating a liability against a municipal corporation, under the poor laws of the state.

Hence the trial court erred in this respect, and the order denying the defendant's motion for a new trial must be reversed.

So ordered.