# REPUBLIC OF HAWAII *v.* G. L. EDWARDS.

## REHEARING.

SUBMITTED MARCH 23, 1899.             DECIDED MAY 31, 1899.

JUDD, C.J., FREAR AND WHITING, JJ.

During the present transition period, felons may be prosecuted without the intervention of a grand jury and convicted by nine out of
twelve petit jurors, as permitted by Hawaiian statutes, notwithstanding the fifth and sixth amendments to the Constitution of the
United States and the clause in the Joint Resolution of annexation
which provides for the continuation of Hawaiian municipal legislation not inconsistent with the Constitution of the United States.

### OPINION OF THE COURT BY FREAR, J.

The defendant having been convicted of an attempt to commit sodomy came to this court on exceptions and a writ of error
based mainly on the following grounds: (1) that the trial judge
erred in his instructions to the jury in regard to the right to convict on the uncorroborated testimony of an accomplice and (2)
that the trial and conviction were illegal because the indictment
had been found a true bill by the circuit judge as required by
Hawaiian statutes and not by a grand jury as supposed to be required by the fifth amendment to the Constitution of the United
States and because the verdict was rendered by ten only of the
twelve petit jurors as permitted by Hawaiian statutes and was
not unanimous as supposed to be required by the sixth amendment to the said Constitution. This court (then differently constituted owing to the absence of one of the Justices, in whose
place a member of the bar sat) found that there had been no

error and overruled the exceptions and dismissed the writ (11 Haw. 571) but afterwards, upon motion, granted this rehearing.

Nothing has been adduced in argument that requires us to add to what was said in the former opinion in regard to the first of the above mentioned grounds.

The main question is whether the fifth and sixth amendments to the Constitution of the United States extended to these islands at the time of the conviction, August 16, 1898, four days after the transfer of the sovereignty of these Islands to the United States in pursuance of the Joint Resolution of Congress, approved July 7, 1898, to provide for annexing these Islands to the United States.

It has just been held by this court in the case of *W. C. Peacock & Co., Ltd. v. Republic of Hawaii, ante* p. 27, that, assuming that various provisions of the Constitution of the United States in regard to which there is great difference of opinion extend for the purposes of ordinary or permanent congressional legislation to territory belonging to the United States as well as to the States proper, they do not necessarily extend of their own force to newly acquired territory immediately upon its acquisition, but that the laws and government of the ceded territory continue for such reasonable time as may in the judgment of the political department of the government be deemed requisite for the enactment of suitable legislation for the new territory in conformity with the provisions of the Constitution. If, therefore, we assume, as we did in the *Peacock* case, that the constitutional provisions in question would under ordinary circumstances extend to Hawaii, still we must hold, as in that case, that they were not in force here *ex proprio vigore* immediately after the transfer of sovereignty. The question then remains whether they were intended by Congress to be extended here forthwith. That case and this are alike in this respect, that in each the question whether the constitutional provisions respectively involved extend to Hawaii during the present transition state is a question of the construction of the Joint Resolution of annexation with a view to ascertaining the intention of Congress. They differ in

this, that in the *Peacock* case, which involved the constitutional provision with reference to uniformity of customs duties it was expressly declared in the Joint Resolution of annexation that the customs relations of these Islands with the United States and other countries should continue until the United States customs laws should be extended to these Islands, while in the present case there is no clear declaration one way or the other. There is, it is true, one paragraph in the Joint Resolution which might at first reading seem to indicate, by implication, an intention to extend the provisions of the Constitution to these Islands at once. It is this:

"The existing treaties of the Hawaiian Islands with foreign nations shall forthwith cease and determine, being replaced by such treaties as may exist, or as may be hereafter concluded, between the United States and such foreign nations. The municipal legislation of the Hawaiian Islands, not enacted for the fulfillment of the treaties so extinguished, and not inconsistent with this joint resolution *nor contrary to the Constitution of the United States* nor to any existing treaty of the United States, shall remain in force until the Congress of the United States shall otherwise determine."

We held in the *Peacock* case that, whatever inference might be made from this language if standing alone, it was controlled so far as customs duties were concerned by the more particular clause immediately following it expressly declaring that the customs relations of these islands with the United States and other countries should continue until further action by Congress. But there is no similar express declaration in regard to indictments and jury trials.

The argument is that, on the principle of *expressio unius, exclusio alterius,* the expression of an intention to continue in force those Hawaiian laws which were not inconsistent with the Constitution of the United States implies an intention to discontinue those laws which were inconsistent with the Constitution; and that the effect of this clause in the Joint Resolution is to bring this case within the decisions referred to in the *Peacock* case, which have held various territorial acts unconstitutional on

the ground that the Constitution was in force in the territories by act of Congress whether in force there *per se* or not. The clauses in former acts which have been the subject of construction in the decisions referred to are variously worded but in substance they are in general either positive provisions expressly extending the Constitution of the United States to the Territory in question worded somewhat as follows: "The Constitution and laws of the United States shall have the same force and effect in the Territory as elsewhere in the United States," or else they are limitations upon the exercise of legislative power in the future, worded somewhat as follows: "The legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States." It is clear that under neither of such clauses is there any occasion for a resort to an argument by implication. In the one case the Constitution was expressly and affirmatively extended to the Territory. In the other case legislative power was conferred to be exercised only in so far as it should not be inconsistent with the Constitution, and of course the power could not be exercised beyond the extent to which it was granted, for it did not exist at all except in so far as it was granted. The decisions, therefore, based on such statutes cannot govern this case. The argument here is solely one of inference. But is it not a sound argument in itself irrespective of the decisions under dissimilar statutes?

If we are to argue from inference we must argue from all the inferences—inferences from other parts of the Joint Resolution, from the Resolution as a whole and from the circumstances under which it was adopted, as well as from the particular clause referred to.

It may be observed, preliminarily, that the inference in question is not a necessary inference. It is subject to be modified or rebutted by other inferences. The continuation of certain Hawaiian laws does not necessarily repeal the remainder.

It may be observed, also, that this inference is one of repeal and that repeals by implication are not favored. As shown in the *Peacock* case, the municipal legislation of Hawaii would con-

tinue in force temporarily in the absence of any declaration on the subject one way or the other. Therefore, to make the inference in question would be to hold that the sentence of the Joint Resolution under consideration was intended to be, not, as it purports, an affirmative declaration of what should continue, but an indirect repeal of what was not declared to continue. On general principles such a construction should not be favored.

This general principle finds support in the course pursued in reference to other repeals in the Joint Resolution. The Resolution directly repeals certain portions of Hawaiian law. It repeals the Hawaiian laws relating to Chinese immigration, and in the very paragraph in question, it repeals Hawaiian treaties. If then the sentence in question had been intended to operate as a repeal, is it not probable that it would have been worded more directly, as were the other repealing clauses of the Resolution?

This view finds further support in the general intention of Congress as shown by the Resolution as a whole. The Resolution is set forth in full in the *Peacock* decision. Congress did not attempt to go into particulars except with reference to a very few matters with regard to which there was special reason for making particular provision. The President was given very great power and very wide discretion. "All the civil, judicial, and military powers exercised by the officers of the existing government in said islands" "shall be exercised" "until Congress shall provide for the government of such islands." "The municipal legislation of the Hawaiian Islands,  *  *  *  shall remain in force until the Congress of the United States shall otherwise determine." A commission was provided for, to recommend such legislation as they should deem necessary or proper. Congress recognized that it was not in a position to legislate in detail at that time. It manifested a general intention to allow matters to go on about as usual here subject to the supervision of the President until it should be in a position to make such changes as should be deemed proper. It manifested a general intention that order should prevail, and that there should be no hiatus in the government of these Islands. Is it

probable in view of this general intention manifested in the
Resolution as a whole, that Congress intended by the incidental
indirect clause in question to repeal large and most important
portions of Hawaiian law blindly, without any knowledge of the
results and without substituting other necessary provisions in
their places?

And this leads to the further consideration that this view finds
support in the circumstances under which the Resolution was
adopted.   It was known that Hawaii had had a constitutional
government for nearly sixty years with its executive, legislative
and judicial departments, that during that period a large amount
of legislation must have accumulated providing for the machi-
nery of government and the administration of justice, and that
the laws of no two governments, however much civilized or
christianized they may be, are the same even upon the important
matters covered by the Constitution of the United States.   Con-
gress must have known from the nature of things that there
might be legislation in these islands entirely proper in itself and
satisfactory to the people directly interested and yet not con-
sistent with certain provisions of the Constitution.   Take the
very matters in question.   In several of the United States there
are provisions like those found here for prosecutions without the
intervention of a grand jury and for verdicts by nine out of
twelve jurors.   The Constitution does not prohibit such provi-
sions in the several States.   There is no inherent objection to
them.   Many jurists regard them as better than the ordinary ones
which require grand juries and unanimity of verdicts.   Under
such circumstances is it likely that Congress deliberately intended
to repeal the existing machinery for the administration of justice
without providing a substitute, with the result that crimes could
be perpetrated with impunity and the fundamental rights of life,
liberty and property could not be protected?   To do that would
be to subordinate the substance and spirit of the Constitution to
the mere form of some of its provisions.   An act of so general
a character as the Resolution in question and passed under such
circumstances ought to be construed liberally with a view to

effecting if possible what is reasonable and just and therefore probably intended by Congress rather than in such a way as to impute to Congress recklessness and injustice.

Again, it was provided in the Resolution that:

"Until Congress shall provide for the government of such islands all the civil, judicial and military powers exercised by the officers of the existing government in said islands shall be vested in such person or persons and shall be exercised in such manner as the President of the United States shall direct.    *    *    *"

In the exercise of this power the President directed that

"The civil, judicial and military powers in question shall be exercised by the officers of the Republic of Hawaii, as it existed just prior to the transfer of sovereignty.    *    *    *"

Under similar legislation in the case of Louisiana the President invested a Governor with all the powers exercised by the Governor General and Intendant under the King of Spain, under whom trials were conducted without the intervention of a jury at all. See the decision in the *Peacock* case. These are positive provisions under which, in the absence of other provision to the contrary, prosecutions could be conducted without the intervention of grand juries and verdicts rendered by nine out of twelve jurors could be lawfully received. Are these positive provisions to be outweighed by the indirect provision in regard to the Constitution?

Thus it appears that there is at least much reason to believe that Congress did not intend to extend the Constitution in all its fullness to these islands immediately, and that the construction contended for should not be put upon the clause in question if that can be avoided. Can it be avoided? Is there any other reasonable explanation that can be given the clause in question?

In our opinion it can be easily explained as part of a declaratory as distinguished from a remedial provision. A declaratory statute is one that is intended to remove a doubt as to the existence or effect of an existing rule of law. A remedial statute is one that is intended to alter an existing rule of law or establish

a new rule. Now take the provision in question. Its main purpose is expressed in these words:

"The municipal legislation of the Hawaiian Islands * * * shall remain in force until the Congress of the United States shall otherwise determine."

This, we have seen, is merely declaratory of what the rule would be in the absence of any provision on the subject. There are four qualifying clauses. The first is:

"Not exacted for the fulfillment of the treaties so extinguished."

It was necessary, if any provision was inserted continuing Hawaiian laws, for the sake of truth and exactness to name the exceptions. In the first sentence of the paragraph in question the Hawaiian treaties were expressly repealed. Hence, it was necessary to insert the qualifying clause now in question and this insertion was merely declaratory.

The fourth qualifying clause is:

"Nor (contrary) to any existing treaty of the United States."

We may say of this clause very much as we said of the first clause: By the terms of the first sentence of the paragraph the Hawaiian treaties were replaced by the United States treaties. In other words the United States treaties were expressly extended to Hawaii, and therefore it was necessary to insert the qualification as to them and this insertion was merely declaratory.

The second qualifying clause is:

"And not inconsistent with this joint resolution."

The Joint Resolution expressly altered Hawaiian municipal legislation in some respects, as, for instance, in respect to Chinese immigration, and presumably altered it by implication in some respects. Therefore it was necessary to insert this qualification for the sake of exactness and the insertion was merely declaratory.

Thus the main portion and three of the qualifying clauses of the provision in question are found to be merely declaratory. Is it not likely that the remaining clause,

"nor contrary to the Constitution of the United States," also was intended to be merely declaratory and not remedial? Were not all these qualifying clauses inserted for the sake of exactness and to avoid absurdities and inconsistencies, and not for the purpose of taking this method of enacting independent positive legislation? If any provisions of the Constitution extend to Hawaii of their own force during the present transition period, it would be necessary to insert the requisite qualification. And it might well be argued that certain provisions of the Constitution did so extend, for these islands were annexed and are now held and governed by powers conferred by the Constitution either expressly or by implication. Congress at least would not by omitting the clause in question subject itself even to the suspicion that it intended to exercise powers not conferred by the Constitution. If then this clause was intended to be merely declaratory and not remedial, only such provisions would be in force here as would be in force *ex proprio vigore*, and by the reasoning in the *Peacock* case, the provisions respecting grand juries and trial by jury would not be so in force here during the present transition period. In other words, so far as the Constitution was concerned, Congress intended to continue temporarily in force all the Hawaiian municipal legislation that it could and did not intend by the clause in question to extend the provisions of the Constitution here more fully than they would be in force here *ex proprio vigore*. And Congress well knew that, whether the Constitution was in force in the territories in its fullness for purposes of ordinary legislation or not, it was not so in force under circumstances like the present, for not only must Congress be presumed to know the recognized rules governing cases of acquisition of territory and the precedents in United States history, from the statutes passed in connection with some of which the Resolution in question was apparently in part copied, but the Resolution itself recognizes this distinction. It expressly provides for the continuation of the Hawaiian customs laws, notwithstanding the provision of the Constitution that, "all duties, imposts and excises shall be uniform throughout the United States." If Con-

gress had supposed that provision of the Constitution was in force *per se* during this transition period, it certainly would not have attempted to continue the Hawaiian customs laws.

We are therefore of the opinion that Congress did not intend by the Joint Resolution of annexation to extend to these islands the fifth and sixth amendments of the Constitution of the United States and that, upon the reasoning of the decision in the *Peacock* case, the said amendments were not in force here *ex proprio vigore* at the time of the defendant's conviction and that the verdict must stand.

*Attorney-General H. E. Cooper* and *Deputy Attorney-General E. P. Dole* for the prosecution.

*G. A. Davis* and *L. A. Dickey* for the defendant.