HAROLD P. NELSON v. JOSEPH L. SANDKAMP AND ANOTHER.[1]

November 19, 1948.

No. 34,712.

1Reported in 34 N. W. (2d) 640.

*Louis J. Reed* and *Phillips & Sherwood,* for appellants.
*Ahles & Ahles,* for respondent.

MATSON, JUSTICE.

Appeal by defendants from a judgment in a personal injury action.

In 1935, plaintiff, who was then only 12 years old, was injured by a bullet fired from a 22-caliber rifle handled by the 12-year-old son of defendants. Plaintiff's action is based on the alleged negligence of defendants in permitting their minor son to have the use of a firearm. The verdict was for plaintiff, and judgment was entered in his favor. The only issue presented by this appeal is whether the action is barred by the statute of limitations.

Plaintiff was born on October 21, 1923, and reached his 21st anniversary on October 21, 1944. The summons and complaint in plaintiff's action were filed on April 17, 1946, and served upon defendants in California on May 7, 1946. Pursuant to M. S. A. 541.15, the running of the statute of limitations (§ 541.05) is suspended during the period a plaintiff is within the age of 21 years and for an additional

period of one year after the plaintiff's disability for infancy has ceased. The statute of limitations is further qualified by § 541.13, which provides that if a person, after a cause of action has accrued against him, *"departs* from and *resides* out of the state, the time of his absence is not part of the time limited for the commencement of the action."* (Italics supplied.) In the instant case, the defendants left Minnesota for California on October 20, 1945. In determining whether the statute of limitations has run, it becames essential to ascertain (1) on what day in October 1944 plaintiff attained the age of 21 years—in the sense that his disability as an infant had ceased; (2) when the one-year period after the cessation of disability of infancy expired; and (3) further whether defendants' absence from Minnesota and sojourn in California constituted a *departure* from and a *residing* out of this state within the meaning of § 541.13.

As already noted, plaintiff was born October 21, 1923, and reached his 21st anniversary on October 21, 1944. Where the common law prevails, the general rule for the computation of time is to exclude the first and include the last day. Nebola v. Minnesota Iron Co. 102 Minn. 89, 112 N. W. 880, 12 Ann. Cas. 56. For over 200 years, the common law has, however, recognized a · remarkable exception to the foregoing rule, to the effect that in computing a person's age the day upon which that person was born, even though he was born on the last moment thereof, is included, and he therefore reaches his next year in age at the first moment of the day prior to the anniversary date of his birth. 1 Redfield, Law of Wills (3 ed.) p. 17. This exception has become so well established over a long period of time that it has attained an independent status of its own. Our computation-of-time statute (§ 645.15) is but declaratory of the general common-law rule. Nebola v. Minnesota Iron Co. *supra.* A declaratory or expository statute is one which has been enacted in order to put an end to a doubt as to what is the common law—or the meaning of another statute—and which declares what it is and ever has been.[2] Clearly, § 645.15 is expressive of only the general common-

---

[2]Republic of Hawaii v. Edwards, 12 Hawaii 55; In re Ungaro, 88 N. J. Eq. 25, 28, 102 A. 244, 246; Gray v. Bennett, 44 Mass. (Metc.) 522, 527;

▆▆▆▆▆▆▆▆▆▆▆▆

law rule and does not presume to abrogate the well-established exception thereto governing the computation of a person's age. If we were to hold otherwise, the statute would be in derogation, and not merely declaratory, of the common law, and as such it would require a strict construction which would reasonably and necessarily exclude its application to the exception. See, Donnelly v. Minneapolis Mfg. Co. 161 Minn. 240, 245, 201 N. W. 305, 307; Jung v. St. Paul F. Dept. Relief Assn. 223 Minn. 402, 405, 27 N. W. (2d) 151, 153. A declaratory act is, of course, not to be confused with a remedial statute, which is intended to alter or cure a defect in an existing rule of law. Republic of Hawaii v. Edwards, 12 Hawaii 55. It follows that § 645.15 has no application in calculating a person's age. The prevailing rule, therefore, governs in this jurisdiction, and in computing a person's age the day of his birth is included, and he becomes of age on the first instant of the day preceding his 21st anniversary.[3] Plaintiff herein, having been born on October 21, 1923, became 21 years of age on the first moment of October 20, 1944, and consequently his disability ceased on the last moment of October 19.

▆▆▆▆▆▆▆ By § 541.15, plaintiff had one year after his disability of infancy ceased in which to bring his action. From the first moment of October 20, 1944, plaintiff had the capacity to bring the action, but on what date did the year expire? Does § 645.15, which provides that a period of time prescribed by law shall be computed so as to

McMahon v. Maddox (Tex. Civ. App.) 297 S. W. 310, 312; State ex rel. White v. Wirt County Court, 63 W. Va. 230, 245, 59 S. E. 884, 981, 982; 11 Wd. & Phr. (Perm. ed.) 398.

[3]Ross v. Morrow, 85 Tex. 172, 19 S. W. 1090, 16 L. R. A. 542; State v. Clarke, 3 Del. (Harr.) 557; United States v. Wright (8 Cir.) 116 C. C. A. 659, 197 F. 297; Erwin v. Benton, 120 Ky. 536, 87 S. W. 291, 9 Ann. Cas. 264; Taylor v. Aetna L. Ins. Co. (D. C.) 49 F. Supp. 990; Pate v. Thompson (Tex. Civ. App.) 179 S. W. (2d) 355; In re Bardol, 253 App. Div. 498, 4 N. Y. S. (2d) 795, 254 App. Div. 647, modifying 164 Misc. 907, 300 N. Y. S. 60, affirmed, 278 N. Y. 543, 16 N. E. (2d) 96; Gibson Coal & Coke Co. v. Allen (6 Cir.) 280 F. 28 (obiter dictum); Bardwell v. Purrington, 107 Mass. 419; Bemis v. Leonard, 118 Mass. 502, 19 Am. R. 470 (obiter dictum); Williston, Contracts (1936) § 224; 34 Am. Jur., Limitation of Actions, § 200; 27 Am. Jur., Infants, § 5.

exclude the first and include the last day, apply? In a variety of circumstances, we have held that it is applicable to the construction of statutes prescribing or fixing periods of time.[4] As already noted, this section is but declaratory of the common law. Defendants contend, however, since the reason for the application of the rule at common law is that the law takes no notice of fractions of days, that the rule as declared by § 645.15 should not be applied here, in that plaintiff had the whole, and not a mere fraction, of the day of October 20 in which to bring his action. See, Annotation, 49 L. R. A. 193. This contention must be rejected in the light of our prior decisions wherein we have declared that certainty and uniformity in the application of the rule for the computation of time is of more importance than the reason for its application at common law. In Spencer v. Haug, 45 Minn. 231, 233, 47 N. W. 794, 795, Mr. Justice Mitchell said:

"* * * Inasmuch as the certainty of a rule is of more importance than the reason of it, we think the legislature intended by section 68 [M. S. A. 645.15] to put an end to all this confusion and uncertainty by adopting a uniform rule for the computation of time alike applicable to matters of mere practice and to the construction of statutes."

See, McGinn v. State, 46 Neb. 427, 65 N. W. 46, 30 L. R. A. 450, 50 A. S. R. 617; State ex rel. Hunzicker v. Pulliam, 168 Okl. 632, 637, 37 P. (2d) 417, 422, 96 A. L. R. 1294; Friesz v. Olsness, 51 N. D. 210, 199 N. W. 590; Boring v. Boring, 155 Kan. 99, 104, 122 P. (2d) 743, 746. There will be no uniformity or certainty if the application of the statute is to be made dependent upon the circumstances of each case. Undoubtedly, in making § 645.15 expressive of the common-law rule, the legislature intended to provide a certain and uniform rule for the computation of periods of time prescribed or

---

[4]Spencer v. Haug, 45 Minn. 231, 47 N. W. 794; Johnson v. Merritt, 50 Minn. 303, 52 N. W. 863; Nebola v. Minnesota Iron Co. 102 Minn. 89, 112 N. W. 880, 12 Ann. Cas. 56; Haack v. Coughlan, 134 Minn. 78, 158 N. W. 908; Bank of Dassel v. March, 183 Minn. 127, 235 N. W. 914; 6 Dunnell, Dig. & Supp. § 9625.

fixed in all statutes, except in those cases where the statutory terms affirmatively indicate the contrary. We find nothing in § 541.15 to make the rule inapplicable herein. It follows, in computing the period of one year from the time plaintiff's disability of infancy ceased, that we must exclude October 20, 1944, the first day when he was possessed of capacity to bring his action, and include *all* of October 20, 1945. A day, unless expressly qualified or limited, comprises a 24-hour period extending from one midnight to the next midnight. § 645.45(9). In other words, defendants in departing from Minnesota on the day of October 20, 1945, before that day had fully run its course, left this jurisdiction before the expiration of the full year allotted to plaintiff for the bringing of his action.

Did defendants depart from and reside out of Minnesota within the meaning of § 541.13? This issue requires a more detailed consideration of the evidence. For ten years prior to October 20, 1945, defendants had lived in Waite Park, a suburb of St. Cloud, Minnesota, where defendant Joseph L. Sandkamp owned and operated a retail liquor business. In July 1945 he sold his business. Shortly thereafter, defendants sold their Waite Park home, which at that moment was occupied not by themselves, but by their daughter and daughter-in-law. In 1944, defendants had acquired a house on the Sauk River near St. Cloud. They occupied this latter residence from March 1945 until their departure. When the Waite Park residence was sold, part of the household goods were given to their daughter and daughter-in-law to furnish an apartment for them, and the remainder were transferred to the Sauk River house. Prior to their departure, Mr. Sandkamp resigned his position as mayor of Waite Park. Defendants then rented their Sauk River house completely furnished to one Meyer, but, according to their testimony, they reserved a room for themselves with right of access thereto at all times. Meyer occupied the house from October 1945 until January 1, 1946, when defendants' daughter went into possession.

On October 19, 1945, defendants, taking with them only their clothing, started for California by automobile. The first night of their journey was spent at Fergus Falls, and sometime on the fol-

lowing day they crossed the Minnesota border into North Dakota. En route they visited friends or relatives in Washington, Oregon, and California. About December 4, 1945, they arrived at Santa Ana, where they have since lived, with the exception of a period—subsequent to the commencement of this action—in the spring and summer of 1946, when they returned to St. Cloud. During this return trip to Minnesota, Mr. Sandkamp voted at the primary election in the township of St. Cloud. The next fall he voted by mail in the same precinct in the general election.

What was the purpose of their trip to and sojourn in California? Both defendants testified that their intention was, after visiting relatives in Washington and Oregon and after spending the winter months with relatives in Los Angeles, to return to Minnesota in the spring. They contend that their return as originally planned was thwarted by a business transaction. On December 4, 1945, Mr. Sandkamp entered the retail liquor business in Santa Ana. He was a general partner with one Kunz from December 4, 1945, until April 1946, when Mr. Sandkamp became sole owner by his purchase of Mr. Kunz's share. Defendants claim that this business venture was not contemplated by them at the time of their departure from Minnesota; that Mr. Kunz, a former acquaintance, first contacted them in this regard after their arrival in California; that Mr. Kunz disclosed to them his plans to enter the retail liquor business and his lack of necessary funds for the venture; that he proposed a temporary investment scheme whereby Mr. Sandkamp would supply the needed funds in return for a general partnership agreement and an understanding that Kunz would purchase Sandkamp's entire interest the following spring; that the investment was made under this plan, but that Kunz failed to raise the necessary funds to purchase Sandkamp's share as agreed; that Sandkamp then bought out Kunz.

Defendants contend that their removal to California did not constitute a departure from and residence out of this state within the meaning of the statute. The words "he departs from and resides out of the state" as used in § 541.13 are to be construed as meaning

*he departs from and acquires a domicile out of the state.* In other words, the statute contemplates a change of domicile as a prerequisite for tolling the statute of limitations. In this sense, the statute has been construed as if the words "residence" and "domicile" are synonymous in meaning (contrary to the accepted distinction in meaning), and that a change of domicile involves a change of a person's true, fixed, and permanent home or place of abode, to which such person intends to return whenever he is absent. Venable v. Paulding, 19 Minn. 422 (488); Kerwin v. Sabin, 50 Minn. 320, 52 N. W. 642, 36 A. S. R. 645, 17 L. R. A. 225; Converse v. Glenn, 162 Minn. 513, 202 N. W. 732; 15 Minn. L. Rev. 668; Restatement, Conflict of Laws, § 9. A departure from the state which involves merely a temporary sojourn elsewhere, as distinguished from the acquirement of a new domicile, is insufficient to toll the statute of limitations. Whether a person departs from the state to domicile himself elsewhere is a question of fact for the jury. Venable v. Paulding, 19 Minn. 422 (488); Converse v. Glenn, 162 Minn. 513, 202 N. W. 732; 34 Am. Jur., Limitation of Actions, § 455; Restatement, Conflict of Laws, Minn. Ann. § 9. In the instant case, the jury found that defendants on October 20, 1945, departed from Minnesota for the purpose of changing their domicile to California. Taking, as we must, the view of the evidence most favorable to the verdict, we cannot say that the verdict is not reasonably sustained. A change of domicile involves an act coupled with an intent. Keller v. Carr, 40 Minn. 428, 42 N. W. 292 (dictum); Town of Albion v. Village of Maple Lake, 71 Minn. 503, 74 N. W. 282; Restatement, Conflict of Laws, § 9. Here, the sale of defendants' long-established home, the sale of the business, and Mr. Sandkamp's resignation as mayor, coupled with the removal to California, where a new business was acquired, are facts from which the jury could find that the act of departure from the state was coupled with an actual intent of accomplishing a change of domicile. Although these evidentiary facts, coupled with other evidence, would justify inferences and findings to the contrary, the evidence as a whole sustains the verdict.

Judgment affirmed.