STATE OF HAWAII *v.* WENDELL MITSUO TOMI-NAGA, ROY ISAMU OCHI, ALGY KANANI YANG, GILBERT CHANG, TERRY NORIO ODA, REGINALD SHIGERU SATAKE AND ALFRED CASTRO.

STATE OF HAWAII *v.* TERRY NORIO ODA, ALFRED CASTRO, ALGY KANANI YANG, REGINALD SHIGERU SATAKE, WENDELL MITSUO TOMI-NAGA, ROY ISAMU OCHI AND JAMES E. SATO.

STATE OF HAWAII *v.* WENDELL MITSUO TOMI-NAGA, TERRY NORIO ODA, REGINALD SHIGERU SATAKE, ROBERT HATAKEYAMA, LIONEL LUNA, KENNETH OGATA AND GEORGE YAMANAKA.

No. 4224.

MAY 29, 1962.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

This appeal is from the order of the trial court denying defendants' suggestion of disqualification and motion to dismiss the indictments entered in three criminal cases, designated below as Criminal Nos. 3226, 3239 and 3283. Preliminarily, this court on May 3, 1961, had ruled that the interlocutory appeal, which was allowed by the trial court, from the order denying the motion to dismiss the indictments would be considered, but that the appeal from the order denying the suggestion for disqualification stood dismissed.

The facts under this appeal stem from *Re Castro and Others*, 44 Haw. 455, *reh. den.*, 44 Haw. 566. For better understandability, the facts before this court in the *Castro* case will be briefly reviewed, together with the events occurring subsequent to the remand entered therein which bring the matter once again before this court under this appeal.

These three criminal cases are joined on appeal for purposes of briefing and argument inasmuch as all of the appealing defendants in Criminal No. 3226, namely, Roy Isamu Ochi, Algy Kanani Yang, Gilbert Chang, Terry Norio Oda, Reginald Shigeru Satake and Alfred Castro, with the exception of defendant Chang, are likewise defendants in Criminal No. 3239, and defendants Oda and Satake in both Criminal Nos. 3226 and 3239 are additionally charged in Criminal No. 3283. The appealing defendants were all juveniles when the alleged offenses occurred. The alleged criminal offenses are all felonies stemming from sexual acts involving three different girls. The consent of the judge of the juvenile court to criminal prosecution covering these defendants arose out of the same or related circumstances. The legal problems in each of the cases are basically the same.

*In Criminal No. 3226:* On Sunday, September 27, 1959, the six juvenile defendants above named, together

with defendant Wendell Mitsuo Tominaga,[1] after having been arrested for investigation of rape were in the custody of the Hilo Police Department. The six juvenile defendants were all below the age of 18 years but over 14 years of age. The judge of the juvenile court subsequently gave the county attorney his oral consent that they be tried as adults and not as juveniles. On Monday, September 28, 1959, they were arraigned before the district magistrate in the district court of South Hilo as adults, under the charge of rape. A preliminary examination was demanded by the defendants but their case was continued from time to time. On September 29, 1959, an oral motion was made before the circuit judge for reduction of the bail set by him and as part of the argument the circuit judge (also in this instance the assigned juvenile court judge) was urged to reconsider his oral "consent" and handle the juvenile defendants as juveniles. This he refused to do, giving his reasons. From this it appears that the judge had received some information from the county attorney prior to giving his oral consent. Thereafter, a petition for rehearing was filed in the juvenile court where the case for the first time was designated as Juvenile No. 5442. When this petition came on for hearing on December 10, 1959, before a new judge, who, in the meantime, had succeeded the previous judge, evidence was introduced pertaining to "group sexual activity" on the part of the juvenile defendants, as well as other students of the high school they attended. The psychiatric reports of a Hilo psychiatrist, who had examined the juvenile defendants, were also considered. At the conclusion of the hearing the judge refused to change his predecessor's previously given consent and ordered the juvenile defendants tried as adults. At this stage the appeal taken under *Re Castro and Others,* 44 Haw. 455, was decided adversely

---

[1]This defendant was an adult and is not an appellant herein.

to the juvenile defendants. Upon remand, the grand jury of the circuit court of the third circuit, before a preliminary hearing was had in the district court, returned a true bill charging the juvenile defendants with rape and with assault with intent to rape in alternative counts. This case will be hereinafter referred to as the "rape" case.

*In Criminal Nos. 3239 and 3283:* On October 29, 1959, petitions were filed in the juvenile court of the third circuit (Juvenile Nos. 5303, 5465, 5466, 5467 and 5468) alleging the delinquency of five of the six juvenile defendants named in the "rape" case; the allegations were of sexual acts involving girls other than the one named in the "rape" case; the charges against them were read on November 2, 1959; the cases were then continued until December 10, 1959, after the petition for rehearing in the "rape" case had been concluded. At that time counsel for the juvenile defendants urged that they should be handled as juveniles on the same basis and for the same reasons and on the evidence adduced at the rehearing in the "rape" case. The juvenile court judge dismissed the petitions and consented to the handling of the juvenile defendants as adults under criminal proceedings.[2] A petition for rehearing filed in the juvenile court on December 21, 1959, was denied and the juvenile court judge again ordered the juvenile defendants to be handled as adults under criminal proceedings. These matters were likewise before this court in the appeal taken in *Re Castro and Others, supra.* Upon remand, the grand jury of the third circuit court returned true bills against the juvenile defendants charging them with sexual intercourse with a female under the age of 16 as follows: In Criminal No. 3239 five of the juvenile defendants (excepting Gilbert

---

[2] The juvenile defendants specify as error in Criminal No. 3283 "that no consent to have the juveniles tried as adults was ever made." However, the record clearly discloses that this case arose out of offenses alleged in the petitions filed in Juvenile Nos. 5303 and 5466.

Chang) were indicted in connection with sexual relation with a girl other than the one involved in the "rape" case; in Criminal No. 3283, juvenile defendants Oda and Satake were indicted for sexual involvement with still another girl. Although the juvenile defendants had been under arrest they were not arraigned before a district magistrate nor given an opportunity for a preliminary examination before the above mentioned indictments were returned. These cases will hereinafter be referred to as the "sex-sixteen" cases.

The motion to dismiss the indictments was on the grounds that (1) the circuit court was without jurisdiction because it had never acquired jurisdiction to try the juvenile defendants under the provisions of Chapter 333, Revised Laws of Hawaii 1955, and (2) the juvenile defendants were each denied their right to preliminary hearings before the grand jury considered the charges brought against them in violation of Rule 5 of the Hawaii Rules of Criminal Procedure and Article I, Section 4 of the Constitution of the State of Hawaii and the Fifth and Fourteenth Amendments to the Constitution of the United States. The specifications of error present these same two broad questions.

At the outset, it is difficult to see that the second question involving the denial of the right to preliminary hearings before a district magistrate in any way affects the power of the grand jury to return the instant indictments. The general rule is that in the absence of a controlling statute a grand jury has the right and power to return an indictment before as well as pending a preliminary examination. 27 Am. Jur. 596, *Indictments and Informations,* § 13; *United States ex rel. Hughes* v. *Gault,* 271 U.S. 142; *Ruthenberg* v. *United States,* 245 U.S. 480; *Thiede* v. *Utah,* 159 U.S. 510. In other words a preliminary examination is not a prerequisite to the

returning of an indictment by the grand jury. 27 Am. Jur., *supra; Ruthenberg* v. *United States, supra; Thiede* v. *Utah, supra; cf., State* v. *Trask and Silva,* 45 Haw. 109.

Further, it has been held that there is no constitutional right to a preliminary hearing. *United States* v. *Heideman,* 21 F.R.D. 335, *affirmed,* 259 F.2d 945, *cert. denied,* 359 U.S. 959.

The basic reason for the above rules is set forth in *United States* v. *Slaugenhoupt,* 102 F. Supp. 820, wherein the court, quoting from *Barber* v. *United States,* 142 F.2d 805, stated at page 821:

"The only purpose of a preliminary hearing is to determine whether there is sufficient evidence against an accused to warrant his being held for action by a grand jury; and, after a bill of indictment has been found, there is no occasion for such a hearing."

The rule of law under the Federal Rules of Criminal Procedure, after which the Hawaii Rules of Criminal Procedure are patterned, pertaining to preliminary hearings, is stated in 4 Barron, *Federal Practice and Procedure,* as follows:

"Rule 5(a) requires a preliminary examination before a commissioner or other officer in case of arrest upon a warrant issued upon a complaint or in case of arrest without a warrant. It has been held that since the purpose of such a hearing is to determine whether there is probable cause, a hearing is not necessary if an indictment has already been returned, as the indictment shows that probable cause exists." 4 Barron, *Federal Practice and Procedure,* § 1871, p. 35.

In *United States* v. *Gray,* 87 F. Supp. 436, defendant Gray and another were indicted for an offense and the defendant moved to dismiss the indictment on the ground that he was deprived of a preliminary hearing before

a United States Commissioner because the commissioner continued the hearing at the government's request on more than one occasion, and in the meantime the United States Attorney presented the matter to the grand jury which returned the indictment.

The district court denied the motion and held that no right of the named defendant was violated because the hearing before the commissioner was continued and in the meantime the indictment was returned by the grand jury. The court held that the grand jury has a right to find an indictment against any person against whom sufficient evidence is presented to it, and is not limited to considering cases of only those persons who have been bound over to the grand jury by a committing magistrate. And since the real purpose of a preliminary hearing is to prevent a person from being held in custody without a prompt determination of probable cause, if the grand jury finds an indictment no purpose remains for conducting a preliminary hearing before a committing magistrate. See also *James* v. *Lawrence,* 176 F.2d 18; *United States ex rel. Bogish* v. *Tees,* 211 F.2d 69; *Davis* v. *United States,* 210 F.2d 118; *Yodock* v. *United States,* 97 F. Supp. 307; *United States* v. *Universita,* 192 F. Supp. 154.

The records of the district court of South Hilo disclose that in the "rape" case the juvenile defendants were represented by counsel and demanded a preliminary hearing. The delay through continuances was due to their requests, or with full knowledge of and without objection by their counsel. Once the grand jury acted the district court of South Hilo no longer retained jurisdiction and could not hold preliminary hearings even if it wanted to. They cannot now be heard to complain of prejudice.

In the "sex-sixteen" cases, the record is silent as to

what occurred subsequent to the juvenile court judge's consent to the institution of criminal proceedings against the juvenile defendants. It does not appear that they were ever arraigned before a district magistrate prior to indictment or given a preliminary hearing. In this connection, the juvenile defendants contend that the Hawaii Rules of Criminal Procedure must be interpreted in the light of Section 257-7, Revised Laws of Hawaii 1955, as amended, to make such a hearing mandatory, citing *Rep. of Hawaii* v. *Yamane,* 12 Haw. 189. However, that case was decided prior to the institution of the grand jury in this jurisdiction. See *Rep. of Hawaii* v. *Edwards,* 12 Haw. 55 and 11 Haw. 571. The object and purpose of a preliminary hearing at that time to determine probable cause leading up to prosecution under indictment prepared by the attorney general "to be certified a true bill by the presiding judge," similar in effect to the practice of prosecution under information, is not now applicable. See *Rep. of Hawaii* v. *Edwards,* 11 Haw. 571, 579. In view of the constitutional necessity for grand jury action prior to prosecution for felonies,[3] the requirements of the Hawaii Rules of Criminal Procedure and the statute are purely protective measures for the use and benefit of a defendant to prevent unwarranted detention. Non-compliance with the provisions of the criminal rules or of the statute, while it may afford appropriate relief, cannot and does not preclude the grand jury from acting in a proper case.

Returning to the first general question raised under the motion to dismiss the indictments, we find this to

---

[3]"No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the armed forces when in actual service in time of war or public danger; * * *." *The Constitution of the State of Hawaii,* Article I, Section 8. Provision is made in Rule 7, Hawaii Rules of Criminal Procedure, for the waiver of this constitutional right, in which case the question here presented is obviated.

be germane to the issue of the jurisdiction of the circuit court to handle the juvenile defendants as adults in criminal proceedings. In this connection the specifications of error separate this question into two parts: first, whether Chapter 333, R.L.H. 1955, relating to juvenile courts, requires that a formal petition be filed and a hearing held before the juvenile court judge can "consent" to the institution of criminal proceedings against a juvenile under the age of 18 years, and second, whether the juvenile court judge abused his discretion in so consenting in the instant cases.

The circuit court has jurisdiction to try the juvenile defendants as adults in criminal proceedings involving felonies provided there is a valid consent of the judge of the juvenile court. R.L.H. 1955, §§ 215-17, 249-1, 249-2 and 333-1. The related and equally, if not more, important question in regard to the requirement that the prosecution, at an appropriate stage of the criminal proceedings, sustain the burden of affirmatively establishing on the record the fact of jurisdiction over the juvenile defendants, is not presented under this appeal. *Cf., Childers* v. *Commonwealth,* 239 S.W.2d 255; *Gipson* v. *Commonwealth,* 312 Ky. 144, 226 S.W.2d 758; *Goodfriend* v. *Commonwealth,* 216 Ky. 573, 288 S.W. 330; *Application of Johnson,* 178 F. Supp. 155.

The juvenile defendants contend that in order to give this consent validity there must be a formal petition filed and a hearing held before the juvenile court judge. We have held otherwise in *Re Castro and Others, supra.* Despite the scarcely veiled attempt on the part of counsel for the juvenile defendants to secure yet another rehearing of *Castro* by arguing that such ruling was merely dicta, we see no reason to disturb that ruling, nor do we consider it dicta, as it was necessary to the ultimate determination by this court in that case that

the consent of the juvenile court judge to criminal prosecution was not an appealable order.

It is contended, however, that by virtue of being denied a hearing before "consent" was given by the juvenile court judge for the institution of criminal proceedings, the constitutional rights of the juvenile defendants were violated. However, under the *Castro* case no hearing is required before "consent" of the juvenile court judge to criminal proceedings is given, and no constitutional rights of the juvenile defendants are involved here.

Significantly, a hearing, upon request, was actually given by the juvenile court judge in the present juvenile cases: in the "rape" case on the occasion of the hearing on the oral motion for reduction of bail held on September 29, 1959, followed by a so-called rehearing before the succeeding juvenile court judge on December 10, 1959; and in the "sex-sixteen" cases on the occasion of the so-called rehearing held on December 10, 1959, in the "rape" case.

Finally, we come to the issue of whether or not the juvenile court judge abused his discretion in so consenting in the instant cases. This was specifically reserved in *Re Castro and Others, supra,* and constitutes the crux of this appeal.

In giving his "consent" it is true that the judge of the juvenile court must exercise discretion. However, there are no specific findings of fact that the juvenile court judge is required to make under Section 333-1, Revised Laws of Hawaii 1955. In this respect, our statute differs from statutes in other jurisdictions. See *State v. Van Buren,* 29 N.J. 548, 150 A.2d 649; *State v. Smith,* 52 N.J. Super. 556, 146 A.2d 224; *Tilton v. Commonwealth,* 196 Va. 774, 85 S.E.2d 368; *Berry v. State,* 209 Ala. 120, 95 So. 453; *Ex parte Lewis,* 85 Okla. Crim. 322, 188 P.2d 367; *Wilson v. State,* 65 Okla. Crim. 10,

82 P.2d 308; *People* v. *Ross,* 235 Mich. 433, 209 N.W. 663; *Wade* v. *Warden of State Prisons,* 145 Me. 120, 73 A.2d 128; *White* v. *Reid,* 126 F. Supp. 867. Nonetheless, the consent given must not be arbitrary or capricious.

"The essence of judicial discretion is the exercise of judgment directed by conscience and reason, as opposed to capricious or arbitrary action; and where a court has not exceeded the bounds of reason in view of circumstances, and has not so ignored recognized rules of law or practice, so as to produce injustice, its legal discretion has not been abused; for the question is not whether the reviewing court agrees with the court below, but rather whether it believes that the judicial mind in view of the relevant rules of law and upon due consideration of the facts of the case could reasonably have reached the conclusion of which complaint is made." *Pitts* v. *White,* 49 Del. 78, 109 A.2d 786, 788.

"In a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered." *Berry* v. *Chaplin,* 74 Cal. App. 2d 669, 169 P.2d 453, 456.

In the "rape" case the six juvenile defendants were in the custody of the Hilo Police on Sunday, September 27, 1959. On that day the police referred the case to the county attorney of the County of Hawaii. The county attorney, because he "thought the offense was serious enough, called the judge and made the request" that the juveniles be tried as adults. The judge of the juvenile court was given a resume of the offense by the county attorney's office. The juvenile defendants make much of the fact that the judge was also told "at that time the report was not through and he does not have to make a decision right there and then." A check of the record

discloses that this reference about the report being incomplete was not made in connection with the "rape" case but rather in connection with the investigation of other group activities of these juvenile defendants which later resulted in the "sex-sixteen" cases. Subsequently, the judge of the juvenile court, after consultation with his associate judge and the probation administrator of the third circuit court, called the county attorney's office and stated that he had "formed his opinion and charge them as adults," at the same time fixing the bail of each juvenile defendant at $10,000.00.

On September 29, 1959, an oral motion was made before the circuit court judge for reduction of the bail fixed for the juvenile defendants and as part of the hearing for reduction of bail the judge, as judge of the juvenile court, was urged to reconsider and handle the juvenile defendants as juveniles rather than as adults. This request was refused although the judge suggested a petition for rehearing under Section 333-11, Revised Laws of Hawaii 1955.

Thereafter, a petition for rehearing, as suggested by the judge, was duly filed. Before it could be heard the judge was succeeded on the bench by another. On December 10, 1959, in connection with the petition for rehearing, which was designated as Juvenile No. 5442 (Criminal No. 3226), evidence was introduced to show that acts similar to those with which the juvenile defendants were charged had been indulged in by many other students of the high school they attended. The evidence also showed, as to several of these juvenile defendants, that even before they entered high school such acts on the part of other students were matters of common knowledge to the students at the intermediate school level. The evidence further showed that to the knowledge of several of the juvenile defendants there were other

groups of high school boys who had done and were doing the same acts with which they were charged.

The juvenile defendants had been examined by a Hilo psychiatrist and his reports were received in evidence. His opinion was, in substance, that their whole thinking and their whole acting was that of juveniles rather than that of adults. He stated "in connection with the problem of whether or not these people should be tried as adults or tried as children, I still feel that this must be a social (that is judicial) decision based upon other factors than merely the chronological age of the alleged offenders." At the conclusion of this rehearing the juvenile court judge refused to set aside the consent given by the prior juvenile court judge, ruling that the juvenile defendants be tried as adults.

In the "sex-sixteen" cases petitions were duly filed alleging juvenile delinquency on the part of the juvenile defendants and after the rehearing in the "rape" case had been concluded, a hearing was held on these petitions. Counsel for the juvenile defendants urged that they should be handled as juveniles on the same basis and for the same reasons and on the evidence adduced at the rehearing in the "rape" case. At the conclusion of this hearing on December 10, 1959, the juvenile court judge ordered that the juvenile defendants in these cases likewise be charged as adults, which order was reaffirmed on December 29, 1959, in ruling on a petition for rehearing submitted on stipulation covering the same evidence above outlined.

It is to be noted in the "rape" case that when the juvenile court judge consented over the telephone to have the juvenile defendants tried as adults he also set the bail at $10,000.00, characterized by counsel for the juvenile defendants as "fantastic." That the bail was set so high was indicative of the juvenile court judge's opinion

of the seriousness of the offense, as was. his labeling it "a crime of violence." On the occasion when he considered the motion to reconsider his previous consent, in connection with the motion for reduction of bail, his statement that "if a person can commit a type of offense for which these young men are accused, if they can make that choice, I feel that they should be considered as young men" again indicates that he considered the offense heinous and in that respect determinative of the issue.

The fact that many jurisdictions by statute preclude juvenile court proceedings where the more serious offenses are involved supports the view that the heinousness of the offense of rape requires criminal proceedings. *Cf., State* v. *Municipal Court,* 225 Ind. 23, 72 N.E.2d 357; *Collins* v. *Robbins,* 147 Me. 163, 84 A.2d 536; *Snyder* v. *State,* 189 Md. 167, 55 A.2d 485; *State* v. *Burnett,* 179 N.C. 735, 102 S.E. 711.

Even in those jurisdictions requiring a hearing before a juvenile court can waive or transfer jurisdiction over a juvenile to a criminal court no prejudice was found to have resulted from the failure to conduct such a hearing in the case of an "heinous" offense. In the case of *Goodlet* v. *Goodman,* 34 N.J. 358, 169 A.2d 140, *cert. denied,* 368 U.S. 855, in a habeas corpus proceeding to set aside convictions of two 17 year old defendants for murder, one of the grounds urged by the defendants was the lack of hearing before reference of complaint from the juvenile court to the Court of Oyer and Terminer. Testimony in this case revealed that on several occasions the prosecutor, in connection with the matter of transfer, discussed the murder as well as related robberies and other offenses with one of the two judges who sat in the juvenile and domestic relations court as well as in the county criminal court. The court on page 145 said:

"Murder, it was said, is *per se* a heinous offense

and the court in its discretion would be justified in concluding that no more is needed to warrant relinquishment of the case. In the present situation the judge who occupied both the juvenile and the adult criminal benches, after several conferences with the Prosecutor with respect to the series of derelictions charged to these plaintiffs and others, concluded that the murder alleged was a heinous offense and referred the matter for grand jury consideration. Once the indictment was returned obviously the Court of Oyer and Terminer had jurisdiction to entertain it. * * * we can discover no basis for a finding that they suffered any prejudice as the result of the lack of a hearing of the type envisaged by Van Buren [*State v. Van Buren* (1959), 29 N.J. 548, 150 A.2d 649] before assignment of the complaint for adult treatment."

The contention of the juvenile defendants that the ruling of the juvenile court judge on the hearing of the petition for rehearing was based solely on the previous ruling of the original juvenile court judge is not borne out by the facts of the case as shown by the record in the "rape" case. The testimony of the juvenile defendants was carefully considered as is evident from the questions asked of them by the judge himself. Also carefully considered was the report of the psychiatrist who had examined the juvenile defendants.

The juvenile defendants desired that the juvenile court judge consider primarily the evidence presented at the rehearing and render his ruling based on such evidence. He was at no time requested to reverse the oral consent given by his predecessor except on the basis of the new evidence offered at the rehearing.

We have a situation where a juvenile court judge, after considering the facts of the offense charged, had given his consent that criminal proceedings be instituted.

Subsequently, another juvenile court judge before whom there was even an admission that the offense of rape was committed was urged to consider other factors than the offense itself, such as the thinking of the boys, their immaturity and the prevalence of group sexual activity in ruling on whether or not he also should consent to the institution of criminal proceedings. This second juvenile court judge quite properly considered the decision of the original juvenile court judge and gave it appropriate weight. However, it is apparent that he likewise carefully considered the evidence presented and based his ruling upon the consideration of such evidence when he concluded:

> "Now, what my reaction would be in this case if I handled it originally might be entirely different, but in view of all the circumstances, I do not feel that the evidence as presented this morning that these boys were aware that such activities had been going on for four years any way influenced me that they should be charged as juveniles and not as adults. Insofar as Dr. ———'s report, it doesn't influence me one way or another either. However, I do feel that that report would have a very, very strong bearing and will greatly assist this Court in passing sentence if and when these boys are convicted. But I do not find that that report is helpful to me at this time in deciding as to whether they should be charged as adults or juveniles. Therefore, in view of it, the Court finds there has been no evidence that would justify this Court in amending or overruling the order of the Court that issued the order that the juveniles should be charged as adults. This motion that these boys be charged as juveniles is denied."

Under these circumstances we can find no abuse of discretion on the part of the juvenile court judges in their rulings in the "rape" case.

In the "sex-sixteen" cases, five of the juvenile defendants involved in the "rape" case were involved in offenses all growing out of group sexual activities although not constituting rape. Following the rehearing on December 10, 1959, in the "rape" case and after the court's ruling in that case, denying the request made in the petition for rehearing and consenting to the juvenile defendants being handled as adults, the juvenile court judge on the grounds of consistency dismissed the petitions in Juvenile Nos. 5303, 5465, 5466, 5467 and 5468 (Criminal Nos. 3239 and 3283) and likewise consented to the juvenile defendants being charged as adults on the evidence adduced at the rehearing in the "rape" case which, pursuant to stipulation, was presented in these cases. His feeling was that it would hardly be consistent to treat the juvenile defendants here involved as juveniles when he had consented to their being tried as adults in the criminal court in the "rape" case where the same pattern of gang activity was reflected throughout all the cases. This ruling was affirmed by him on December 29, 1959, after consideration of a petition for rehearing submitted on the same evidence.

The juvenile defendants contend that the juvenile court judge was not considering this second series of charges independently of the "rape" case. We agree but after considering all the surrounding circumstances of the group sexual activities of the juvenile defendants see no abuse of discretion in the decision that they be charged as adults in these related cases also.

Running through all of these cases was a disturbing factor that undoubtedly influenced the juvenile court judges in their rulings that these juvenile defendants should be tried as adults rather than as juveniles. That factor was that all of the offenses involved group sexual activity. With all due respect to the psychiatrist who

examined these juvenile defendants and expressed the opinion that because of this aspect of these cases their thinking and acts were juvenile and childish, still it would seem that any judge faced with a responsibility to the community, as well as to the litigants, would regard the activity here involved as striking at the very core of law and order. The record actually shows more than is revealed by the term "group sexual activity." It was the waylaying of unwary and unsuspecting teen-age girls by a pack of anti-social adolescent youths that renders this gang activity so appalling as to require deterrent action. Consent given by the juvenile court judges that these juvenile defendants be tried in criminal proceedings under these circumstances was not arbitrary nor without the exercise of conscientious judgment.

Affirmed.

*Yoshito Tanaka,* County Attorney, and *Cyril Kanemitsu,* Deputy County Attorney, for Appellee.

*Pence & Ushijima (Martin Pence)* for Appellants.