**UNITED STATES, Appellant,**

**v.**

**Robert Warren TUCKER, Appellee.**

**No. 79-30.**

District of Columbia Court of Appeals.

Argued May 24, 1979.

Decided Oct. 29, 1979.

John H. E. Bayly, Jr., Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the briefs were filed, John A. Terry, and John C. Aisenbrey, Asst. U. S. Attys., Washington, D. C., were on the briefs, for appellant.

Mark A. Bayer, Washington, D. C., appointed by the court, for appellee.

Before NEWMAN, Chief Judge, and HARRIS and MACK, Associate Judges.

MACK, Associate Judge:

The United States, as a statutory appellant, seeks review of an order of the Criminal Division of the Superior Court granting appellee's motion to dismiss for lack of jurisdiction and transferring the case to the Family Division pursuant to D.C.Code 1973, § 16–2302(a).[1] We affirm.

Appellee was arrested on July 4, 1978, and was charged by information with unlawful possession of a narcotic drug, hashish, in violation of D.C.Code 1973, § 33–402. Because appellee's eighteenth birthday occurred on July 5, 1978, he moved to dismiss the information asserting that at the time of the alleged commission of the offense he was a juvenile and therefore not subject to the jurisdiction of the Criminal Division, but rather to the exclusive jurisdiction of the Family Division under D.C.Code 1973, § 11–1101(13).[2] The court, over the objection of the government, agreed.

1. D.C.Code 1973, § 16–2302(a) states:

> If it appears to a court, during the pendency of a criminal charge and before the time when jeopardy would attach in the case of an adult, that a minor defendant was a child at the time of an alleged offense, the court shall forthwith transfer the charge against the defendant, together with all papers and documents connected therewith, to the Division. All action taken by the court prior to transfer of the case shall be deemed null and void unless the Division transfers the child for criminal prosecution under section 16–2307.

2. D.C.Code 1973, § 11–1101 in relevant part states:

> The Family Division of the Superior Court shall be assigned, in accordance with chapter 9, exclusive jurisdiction of—

The sole issue therefore is: How old was appellee on the day before his eighteenth birthday?

It will come as a surprise to some that the common law rule for computing age, relied upon by the government, is that a person is deemed to have reached a given age on the day preceding the anniversary of his birth. *Nichols v. Ramsel,* 2 Mod. 280, 86 Eng.Rep. 1072 (K.B.1677); *Herbert v. Turball,* 1 Keble 590, 83 Eng.Rep. 1129 (K.B. 1663) *discussed in,* Annot., 5 A.L.R.2d 1143, 1145–46 (1949). The government argues that this rule must control because D.C. Code 1973, § 49–301, operates as a bar to this court's power to change the common law absent legislative enactment. That section states:

> The common law, all British statutes in force in Maryland on February 27, 1801, the principles of equity and admiralty, all general Acts of Congress not locally inapplicable in the District of Columbia, and all Acts of Congress by their terms applicable to the District of Columbia and to other places under the jurisdiction of the United States, in force in the District of Columbia on March 3, 1901, shall remain in force except in so far as the same are inconsistent with, or are replaced by, some provision of the 1901 Code.

In *O'Connor v. United States,* D.C. App., 399 A.2d 21, 25 (1979), we stated that this section provides that all common law in force in Maryland remains in force as part of the law of the District unless repealed or modified by statute. In 1776, Maryland adopted the common law of England as it then existed. *Id.* However, as noted in *Linkins v. Protestant Episcopal Cathedral Foundation,* 87 U.S.App.D.C. 351, 354, 187 F.2d 357, 360 (1950), § 49–301 was not intended by Congress to freeze the common law at a particular date and act as a bar to the judicial function of revising and enlarging the common law. We conclude that D.C.Code 1973, § 49–301 was not intended to operate as a bar to this court's inherent power to alter or amend the common law.

Our position is buttressed by findings of the Supreme Court of Appeals of West Virginia which recently undertook an exhaustive analysis of similar state statutory and constitutional provisions and the decisions interpreting these provisions. *Morningstar v. Black & Decker Manufacturing Co.,* W.Va., 253 S.E.2d 666 (1979). The court found that a majority of the courts confronted with this argument of "frozen law" construed their respective provisions as establishing an initial body of law on which a particular state would operate and were not intended to limit the courts in their historic role of developing the common law. *Id.,* 253 S.E.2d at 671. We have joined that majority. *See Linkins v. Protestant Episcopal Cathedral Foundation, supra.*

The issue then becomes whether we should adopt as the law for this jurisdiction the common law rule or the New York rule for computing the age of a juvenile. The New York rule, relied upon by the able trial court, is set forth in *People v. Stevenson,* 17 N.Y.2d 682, 269 N.Y.S.2d 458, 216 N.E.2d 615 (1966), where the Court of Appeals of New York adopted the dissenting opinion of

. . . . .

(13) proceedings in which a child, as defined in section 16–2301, is alleged to be delinquent, neglected, or in need of supervision;

D.C.Code 1973, § 16–2301(3) states:

(3) The term "child" means an individual who is under 18 years of age, except that the term "child" does not include an individual who is sixteen years of age or older and—

(A) charged by the United States attorney with (i) murder, forcible rape, burglary in the first degree, robbery while armed, or assault with intent to commit any such offense, or (ii) an offense listed in clause (i) and any other offense properly joinable with such an offense;

(B) charged with an offense referred to in subparagraph (A)(i) and convicted by plea or verdict of a lesser included offense; or

(C) charged with a traffic offense.

For purposes of this subchapter the term "child" also includes a person under the age of twenty-one who is charged with an offense referred to in subparagraph (A)(i) or (C) committed before he attained the age of sixteen, or a delinquent act committed before he attained the age of eighteen.

the Appellate Division holding that the birthdate, as opposed to an artificial arrangement resulting on the day before the birthdate, controlled the age of a juvenile offender (over seven and less than sixteen years). *People v. Stevenson,* 23 A.D.2d 472, 475–76, 262 N.Y.S.2d 238, 242–43 (1965) (Christ, J., dissenting).

We are also persuaded by the reasoning of the dissenting opinion in *People v. Stevenson, supra.* The rule that a person reaches his next year in age the day prior to the anniversary of his birth was an exception to the general rule of the common law for computation of time which excluded the first day and included the last. *State v. Brown,* 443 S.W.2d 805, 807 (Mo.1969) (en banc); Annot., 5 A.L.R. at 1143; 1 *Minor's Institute* 2d ed. 472 (1876). *See also* Super. Ct.Cr.R. 45(a); Super.Ct.Civ.R. 6(a). The exception was a fiction introduced in the law apparently because the common law took no notice of fractions of a day. *See* Annot., 5 A.L.R. at 1145; 1 *Minor's Institute* at 472. This legal fiction therefore was originally established to aid persons who would experience hardship or loss by virtue of the general rule of computation. *See Erwin v. Benton,* 120 Ky. 536, 87 S.W. 291 (1905) (right to vote one day before twenty-first birthday); *In re Bardol's Will,* 164 Misc. 907, 300 N.Y.S. 60 (1937), *modified and aff'd,* 253 App.Div. 498, 4 N.Y.S.2d 725, *aff'd as modified,* 278 N.Y. 543, 16 N.E.2d 96 (mem.) (1938) (estate of beneficiary entitled to proceeds of a trust when beneficiary died day before twenty-fifth birthday); *Commonwealth v. Howe,* 35 Pa.Super. 554 (1908) (defendant could not be convicted of rape with a female under the age of sixteen when the defendant had relations with her the day before her sixteenth birthday); *Herbert v. Turball, supra* (will made by a testator in his minority and republished the day before his twenty-first birthday is valid).

However, this common law exception was criticized as early as 1876 as being contrary to reason and common sense. *See* 1 *Minor's Institute* at 472–73. The courts which have adopted it have candidly admitted that rather than being persuaded by the soundness of its application, they have adopted it on the basis that it was so well established over a long period of time that the rule attained an independent status of its own. *See Nelson v. Sandkamp,* 227 Minn. 177, 34 N.W.2d 640 (1948); *State v. Brown, supra* at 807; *State In Interest of F. W.,* 130 N.J.Super. 513, 327 A.2d 697 (1974). In this regard it is appropriate to quote Justice Holmes speaking in *The Path of the Law,* 10 Harv.L.Rev. 457, 469 (1897):

> It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.

Justice Sutherland, writing for the Supreme Court in *Funk v. United States,* 290 U.S. 371, 383–84, 54 S.Ct. 212, 216, 78 L.Ed. 369 (1933) cited with approval the following instructive passage from *Ketelsen v. Stilz,* 184 Ind. 702, 707, 111 N.E. 423, 425 (1916):

> " 'One of its [the common law's] oldest maxims was that where the reason of a rule ceased the rule also ceased, and it logically followed that when it occurred to the courts that a particular rule had never been founded upon reason, and that no reason existed in support thereof, that rule likewise ceased, and perhaps another sprang up in its place which was based upon reason and justice as then conceived. No rule of the common law could survive the reason on which it was founded. It needed no statute to change it but abrogated itself.' "

In the absence of any reasons supported in logic, we decline to follow a rule which defies human experience by determining age on the day preceding one's birthday. Moreover, we believe that in view of the rehabilitative purposes of our juvenile justice system, D.C.Code 1973, § 16–2301(3) should be strictly construed against the prosecution and in favor of the person being proceeded against. *See In re Poff,* 135 F.Supp. 224, 226 (D.D.C.1955). As the Supreme Court noted in addressing the

precourt reorganization predecessor of § 16–2301(3), the decision whether an accused is subject to juvenile or adult court is a vitally important one which affects not only the length of confinement but many collateral interests such as the loss of civil rights, the use of an adjudication in subsequent proceedings and disqualification for public employment. *Kent v. United States,* 383 U.S. 541, 556–57, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). *See also United States v. Hudson,* D.C.App., 404 A.2d 175 (1979). Although the District of Columbia Court Reorganization Act was passed subsequent to the decision in *Kent v. United States, supra,* and was intended to work a substantive contraction of juvenile court jurisdiction,[3] it evinces a legislative policy of adult treatment for juveniles emphasizing the nature of the crime rather than merely the age of the accused. *See* D.C.Code 1973, § 16–2301(3)(A). Adoption of the New York rule in this case would be consistent with this policy.[4]

Finally, the government argues that adoption of the New York rule for determining age will inject confusion into other areas of the District's law, including questions as to the exact time one becomes eligible to vote, legally consume intoxicants or enter into binding contractual arrangements. We do not explore the merits of this argument, however, for our decision is limited to a determination of age under D.C.Code 1973, § 16–2301(3).[5] We merely hold that for purposes of that section appellee legally became eighteen years old on the day of his birthday and not the day before. He was therefore properly found by the trial court to be subject to the exclusive jurisdiction of the Family Division pursuant to D.C.Code 1973, § 11–1101(13).[6]

*Affirmed.*

HARRIS, Associate Judge, dissenting:

At oral argument in this case, the members of the division of the court and counsel for both parties readily conceded a lack of prior personal knowledge of the narrow and novel legal principle at issue. Nonetheless, in presenting its contention that appellee became 18 in the eyes of the law on the day before his 18th birthday, the government was advocating a common law rule which had been unbroken for more than 300 years, with the single exception of a New York opinion which is quite cursory and lacking in analysis. *People v. Stevenson,* 17 N.Y.2d 682, 269 N.Y.S.2d 458, 216 N.E.2d 615 (1966), adopting a dissenting opinion in *People v. Stevenson,* 23 A.D. 472, 262 N.Y.S.2d 238, 242–43 (1965) (Christ, J., dissenting).

The majority opinion in this case quotes certain broad comments concerning unreasonable rules of law, and then states:

3. *Pendergast v. United States,* D.C.App., 332 A.2d 919, 923 (1975).

4. The legislative history reveals the intent of Congress:

> Because of the great increase in the number of serious felonies committed by juveniles and because of the substantial difficulties in transferring juvenile offenders charged with serious felonies to the jurisdiction of the adult court under present law, provisions are made in this subchapter for a better mechanism for separation of the violent youthful offender and recidivist from the rest of the juvenile community.

5. It is not necessary in this case to determine age for any purpose other than that of Section 16–2301(3). We note that on July 22, 1976 the District of Columbia Age of Majority Act became law and amended the age of majority to eighteen years of age and specifically affected eligibility to do various things such as practice a profession, make a will, marry and to enter into a contract. 23 DCCR 1177. The problem of determining when a person becomes eighteen years of age was not addressed.

6. The Minnesota Supreme Court has recently reached the same conclusion in *State v. Stangel,* 25 Crim.L.Rep. 2560 (decided Aug. 17, 1979), wherein it stated:

> Our conclusion is that the common-law rule is so at odds with common understanding that it should be abandoned, at least in determining when a person was under the age at which the district court gains jurisdiction over people charged with committing criminal acts. Construing the Juvenile Court Act liberally and being mindful of the common understanding that a person reaches his next year in age on his birthday, we hold that the district court did not err in dismissing the prosecution of defendant as an adult.

In the absence of any reasons supported in logic, we decline to follow a rule which defines human experience by determining age on the day preceding one's birthday. [*Ante,* at 1070.]

I cannot accept such a characterization. It is quite logical to recognize, for example, that a baby is not zero days old on the date of its birth; it then is considered to be one day old.[1] Three hundred and sixty-four days later, on the eve of the anniversary of its birthdate, that same baby has been living for 365 days, and hence analytically is one year old. Our society's practice of celebrating the anniversary of a birthdate does not alter that basic fact.

While a case presenting this problem quite understandably arises seldom in either a criminal or civil context, the government in its brief cites an impressive list of consistent authorities for its position, ranging from *Herbert v. Turball,* 83 Eng.Rep. 1129 (K.B.1663), and *Nichols v. Ramsel,* 86 Eng. Rep. 1072 (K.B.1677), through Blackstone's Commentaries[2] and on to a solid listing of more contemporary American courts which have not found an entrenched and sensible common law principle something lightly to be cast aside. *See, e. g., Turnbull v. Bonkowski,* 419 F.2d 104, 105–06 (9th Cir. 1969); *Fisher v. Smith,* 319 F.Supp. 855, 858 (W.D. Wash.1970) (three-judge court) ("The common law rule for computing age is that one is deemed to have reached a given age at the earliest moment of the day preceding an anniversary of birth"); *Commonwealth v. Howe,* 35 Pa.Super. 554 (1908). Squarely on point is *In re F. W.,* 130 N.J.Super. 513, 327 A.2d 697 (1974), in which the court concluded that a respondent became 18 years of age on the day before his 18th birthday, and hence was no longer subject to the exclusive jurisdiction of the Juvenile Court.

I do not wish to protract this expression of views unduly, but two quotations warrant inclusion herein. In *Nelson v. Sandkamp,* 227 Minn. 177, 34 N.W.2d 640 (1948), which presented a statute of limitations question, the court stated:

> For over 200 years, the common law has, however, recognized . . . that in computing a person's age the day upon which that person was born, even though he was born on the last moment thereof, is included, and he therefore reaches his next year in age at the first moment of the day prior to the anniversary date of his birth. . . . This exception has become so well established over a long period of time that it has attained an independent status of its own. [*Id.,* at 642.]

In *State v. Brown,* 443 S.W.2d 805 (Mo. 1969) (en banc), a defendant contended that he did not become an adult not only until the 18th anniversary of his birthdate, but moreover until the precise hour and moment of his birth had been reached. Rejecting that contention, the court stated:

> [A]s a general rule, the law does not consider fractions of a day . . . . While exceptions to this rule have been made by various courts, most relate to situations where the two acts occur on the same day, such as priorities of liens or deeds filed on the same day. As to computation of a person's age, the same contention as defendant here makes was made in the early case (1633) of *Herbert*

1. This, of course, is predicated on the time-honored common law rule which does not recognize fractions of days. The majority does not challenge that rule in reaching its decision.

2. Blackstone concluded a discussion of attaining various ages and the consequences thereof as follows:

> So that full age in male or female is twenty-one years, which age is completed on the day preceding the anniversary of a person's birth (q)(12), who till that time is an infant and so styled in law . . . .
>
> (12) If he is born on the 16th of February, 1608, he is of age to do any legal act on the morning of the 15th of February 1629, though he may not have lived twenty-one years by nearly forty-eight hours: the reason assigned is, that in law there is no fraction of a day; and if the birth were on the last second of the preceding day twenty-one years after, then twenty-one years would be complete and in law it is the same whether a thing is done upon one moment of the day or on another. [1 W. Blackstone, Commentaries * 463 (citations omitted).]

v. *Turball, [supra]* and the court stated: "* * * and whatever hour he was born is not material, there being no fraction of days." No cases to the contrary have been found.

A second rule of the common law contrary to defendant's theory is the rule that a person reaches his next year in age at the first moment of the day prior to the anniversary of his birth. . . . It may be noted that this rule does not follow the general rule of common law for the computation of time, which was to exclude the first day and include the last. This exception has been followed for such a long period of time that it has achieved a status of its own and should be followed in the absence of a statutory enactment to the contrary. [*Id.,* at 806–07 (citations omitted).]

The long-term consequences of the majority's opinion in this case may not be great. Irrespective of that fact, it would be one thing if the majority were to say candidly that the virtually unvarying common law rule on the issue before us is inconsistent with society's general understanding, and that henceforth all persons shall be deemed to have their ages legally determined by the anniversaries of their birthdates rather than by their actual chronological ages. That result (more appropriately a judgment to be made by the legislature, I respectfully submit [*see Turnbull v. Bonkowski, supra,* at 106]), however, is not reached. The majority assiduously limits its ruling to declaring that this appellee, who had lived 17 years and 365 days when he was arrested and charged with the sale and distribution of hashish (a charge later reduced to possession), should not be treated as though he had reached the age of 18.[3] The manner of making age determinations for all other purposes is specifically left open.

I do not favor an approach whereby a person's age is determined on an ad hoc basis in light of the supposed policies underlying the particular principles presented by each case. A consistent rule for determining age inescapably is much to be preferred, and I believe that consistency would best be served by applying the common law rule that has been virtually unchallenged since at least 1663.[4] Accordingly, I am unable to concur in the manner of my colleagues' disposition of this appeal.

3. The majority bases its ruling on the humanitarian and rehabilitative purposes behind §§ 11–1101(13) and 16–2301(3) of the D.C. Code. Implicit in such an analysis is the dubious assumption that there is some rational distinction between a person's capacity to be rehabilitated on the day before the anniversary of his 18th birthday and his capacity a day later.

4. Prior to the time the opinions in this case were sent to the printer, we were unaware of the August 1979 decision of the Minnesota Supreme Court by which that court appears to have ruled contrary to the great weight of authority in this country and reached the same result as the majority does here. The majority added a reference to that case in its footnote 6. The Minnesota ruling does not alter my views; like the majority, I simply add this footnote to this opinion rather than otherwise revising its content.