**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Delmar HOOKS, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 25, 2006.
Filed March 27, 2007.
Reargument Denied May 21, 2007.

Robert M. Buttner, Public Defender, Scranton, for appellant.

Lisa A. Gillick and Andrew J. Jarbola, Assistant District Attorneys, Scranton, for Com., appellee.

BEFORE: MUSMANNO, BENDER and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Delmar Hooks appeals from his February 28, 2006, judgment of sentence of four to ten years incarceration imposed after he was convicted by a jury of both aggravated indecent assault on a person less than 16 years of age,[1] statutory sexual assault[2], and indecent assault.[3] Appellant raises a single issue for our review.

> Did the Commonwealth fail to present sufficient evidence to establish that the victim was "under 16 years of age" at the time that the offenses of statutory sexual assault and aggravated indecent assault were committed and, therefore fail to meet their burden of proof as to a material element of those crimes, thereby warranting dismissal of those charges … ?

Appellant's brief at 4. Having thoroughly considered the applicable and relevant statutory and case law, we conclude the trial court applied an appropriate analysis to the underlying matter and we affirm the judgment of sentence.

¶ 2 While there was legitimate dispute as to certain facts important to the case, the facts relevant to the issue on appeal are not in dispute. On March 9, 2005, sometime after 8:00 p.m., appellant, who on that date was 23 years of age, had a sexual encounter with the complainant, who was born on March 10, 1989. Thus, the encounter occurred one day prior to complainant's birthday, the 16th anniversary of her birth.

¶ 3 Although the complainant and appellant presented different versions of the events of March 9, 2005, the two provided similar accounts as to the non-essential facts. On the day in question, appellant was working as a door-to-door salesman selling vacuum cleaners and cleaning products for a company based in Elmira, New York. Although based in Elmira, appellant's job assignments were not limited to the Elmira area and, on the day in question, appellant was working door-to-door in the Greater Scranton suburb of Clarks Summit, Pennsylvania. Early in the eve-

---

**1.** 18 Pa.C.S.A. § 3125(a)(8).1

**2.** *Id.* § 3122.1.

**3.** *Id.* § 3126(a)(1).

ning, around 7:00 p.m., appellant knocked on the door of the complainant's residence. The complainant opened the door at which time appellant explained that he was making door-to-door calls demonstrating cleaning products and asked if he could enter the home and conduct a cleaning demonstration. The complainant indicated that her mother was not home and there would be no point in him conducting a demonstration. Appellant allegedly responded that, as he got paid for each demonstration conducted, he would like to conduct the demonstration despite the absence of the mother of the house. Either for that reason, or because it was cold outside, the complainant opened the door, allowed appellant entrance and offered him a drink. As appellant drank the drink provide to him, the parties engaged in some small talk, possibly of a flirtatious quality. Eventually, appellant left while stating that he would return later.

¶ 4 Approximately an hour later, appellant returned to the residence and despite the fact her mother had not returned home, the complainant allowed appellant to once again enter the home. Once inside, the two again began talking and, in the complainant's words, appellant acted in a very forward and "cocky" manner. According to the complainant, appellant stated that he wanted to kiss her and came and sat down next to her on the couch and began rubbing her leg. Eventually, a sexual encounter ensued, although appellant and the complainant provided vastly differing versions of the events.

¶ 5 The complainant indicated to police, and testified at trial, that appellant eventually engaged in sexual intercourse with her. Although she indicated she did not offer physical resistance, she testified that she asked appellant to leave, told him "no" when he asked if he could have intercourse with her and that the act of intercourse was not with her consent. In contrast, appellant testified they never had intercourse but that they kissed and fondled one another and eventually engaged in mutual masturbation until appellant climaxed.

¶ 6 Following an investigation initiated when a friend of the complainant's called police,[4] appellant was charged with rape by forcible compulsion, statutory sexual assault, aggravated indecent assault with a person less than 16 years of age, indecent assault, indecent exposure and sexual assault. As noted above, a jury convicted him of statutory sexual assault, aggravated indecent assault/person less than 16 years of age and indecent assault; he was acquitted of the remaining charges.

¶ 7 As previously stated, appellant was sentenced to four to ten years imprisonment on the aggravated indecent assault charge; no sentence was imposed on the remaining counts as they merged for sentencing purposes. A motion for reconsideration of sentence was denied on March 10, 2006, and this timely appeal followed.

¶ 8 Before addressing appellant's single issue on its merits, we must address a matter of issue preservation. On April 4, 2006, the court directed appellant to file a concise statement of matters complained of on appeal within 14 days pursuant to Pa.R.A.P.1925. Accordingly, appellant was required to file his statement by April 18, 2006. Appellant did file a Rule 1925

---

4. Testimony at trial indicated that the complainant did not initially tell her mother of the incident or report it to the police. The day following the incident, however, she told a friend during a phone conversation that she had been raped by a traveling salesman the day before. The complainant did not volunteer the information but revealed it upon prodding brought on by the friend's sense that something was wrong with the complainant. The complainant told her friend not to tell anyone, but after reflection and after seeking advice from others, the friend notified police, and a full investigation ensued.

statement, but did not do so until April 25, 2006, one week beyond the time allowed by the court's Order. Moreover, the record is devoid of any indication that an enlargement of time for filing appellant's Rule 1925 statement was sought and received.

¶ 9 While upon its face, appellant's 1925 statement appears untimely, we note:

> However, there are caveats to a finding of waiver. First, the trial court must issue a Rule 1925(b) order directing an Appellant to file a response within fourteen days of the order. Second, the Rule 1925(b) order must be filed with the prothonotary. Third, the prothonotary must docket the Rule 1925(b) order and record in the docket the date it was made. Fourth, the prothonotary shall give written notice of the entry of the order to each party's attorney of record, and it shall be recorded in the docket the giving of notice. *See* Pa. R.C.P. 236. If any of the procedural steps set forth above are not complied with, Appellant's failure to act in accordance with Rule 1925(b) will not result in a waiver of the issues sought to be reviewed on appeal.

*Forest Highlands Cmty. Ass'n v. Hammer,* 879 A.2d 223, 227 (Pa.Super.2005) (citation omitted). Our review of the record, and particularly of the docket, reveals that despite the mandates of Pa.R.Crim.P. 114, **Orders and Court Notices: Filing; Service; and Docket Entries,** and *Commonwealth v. Hess,* 570 Pa. 610, 810 A.2d 1249 (2002) the docket fails to indicate the date and manner of service of the court's Rule 1925 Order. Thus, while the first three requirements for finding waiver for failing to comply with Rule 1925 are present, the fourth requirement for the finding of waiver has not been met here. Consequently, we return to the merits of appellant's appeal.

¶ 10 Appellant's sole issue involves the determination of the age of the victim as a material element of the charges of statutory sexual assault and aggravated indecent assault of a person less than 16 years of age. The definition of these two offenses follows:

### § 3122.1. Statutory sexual assault

Except as provided in section 3121 (relating to rape), a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S. § 3122.1.

### § 3125. Aggravated indecent assault

**(a) Offenses defined.**—Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

. . .

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3125.

¶ 11 As is obvious from a brief review of the definitions, the offenses require proof that the victim was less than 16 years of age at the time the offense was committed. It is appellant's contention the Commonwealth failed to present sufficient evidence that the victim was under 16 years of age at the time of the offenses were committed.

¶ 12 It is not in dispute that a common law rule, in fact, holds that for purposes of computing a person's age, one attains the age in question on the day prior to the anniversary of his birthdate. Of course, the crimes of which appellant was convicted are not common law crimes but, rather, products of statute. Thus, the question is what effect the common law rule has on the application of a section of the Crimes Code. It presents a novel issue regarding the interplay of a common law rule with a legislative statute.

¶ 13 The crux of appellant's argument is that the court below erred in *not* adhering to the common law rule. Appellant preserved this issue at the close of the Commonwealth's case by moving for dismissal of those counts containing as an element of the offense that the victim was under the age of 16. The trial court denied the motion which was based on the common law and *Commonwealth v. Howe*, 35 Pa.Super. 554 (1907). In *Howe*, the accused was convicted of engaging in a sexual relationship with a female at some time before she was 16 years of age. Having determined the offense occurred on December 2, 1906, and the victim celebrated her 16th birthday on December 3, 1906, the *Howe* Court, in addressing the criminal statute in effect at that time, the Act of May 19, 1887, P.L. 128, looked to the common law, which construed the day one attains the next age to be the day before the actual anniversary date. The *Howe* Court's analysis, therefore, led to the conclusion the victim was 16 on the date of the sexual relationship. In so holding, this Court read the Act of 1887, mindful of the fact that when the legislature had passed that act, it was held to be cognizant of the common law. Hence, the absence of computation of age within that act was found to be an intended act of the legislature and hence, the adoption of the common law by its silence.

¶ 14 The trial court specifically rejected this rationale and relied on the 1991 Supreme Court case of *Commonwealth v. Iafrate*, 527 Pa. 497, 594 A.2d 293 (1991) (*Iafrate II*). Summarily, Frank Iafrate was convicted by a jury of one count of simple assault. The conviction was the result of an incident that occurred on the day prior to Iafrate's 18th birthday. The trial court, prior to trial, denied a motion to have the case transferred to Juvenile Court and this Court affirmed the judgment of sentence based on *Howe, supra,* and the common law, which this Court acknowledged does not follow the prevailing usage according to which an individual remains 17 until his or her 18th birthday. *Commonwealth v. Iafrate*, 385 Pa.Super. 579, 561 A.2d 1244, 1245–46 (1989) (*Iafrate I), reversed Iafrate II, supra.* This Court, in reluctantly affirming, stated:

Thus, because we are constrained by precedent from our court and from the Pennsylvania Supreme Court, we must affirm the trial court's holding that Appellant was not a "child" on the day before his eighteenth birthday, and was not entitled to trial under the Juvenile Act.

However, we would ask the Supreme Court of Pennsylvania and the General Assembly of Pennsylvania to take note of this archaic rule. Because we, as an intermediate appellate court, can not decide to change established precedent, we ask that these bodies reconsider whether they intended that Pennsylvania statutes which specify certain ages for the purposes of determining attainment of majority, should be construed according to this common law method of age computation which unnecessarily complicates matters and contravenes accepted usage.

We are aware of several states which have changed the common law rule, either legislatively or judicially. We

would urge the same course here, noting the words of Justice Holmes speaking in the *Path of the Law,* 10 Harv.L.Rev. 457, 469 (1897):

> It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.

*Iafrate I* at 1245–46 (citations omitted), *reversed Iafrate II, supra.* Thereafter, the Supreme Court reversed this Court and found that within the meaning of the Juvenile Act, a juvenile attains a given age on the *anniversary of his birthday,* not on the day before as recognized at common law.

¶ 15 The Supreme Court traced the common law rule to seventeenth century England and quoted *United States v. Tucker,* 407 A.2d 1067 (App.D.C.1979). "The exception was a fiction introduced in the law apparently because the common law took no notice of fractions of a day." *Iafrate II* at 499–500, 594 A.2d at 294, *quoting Tucker* at 1070. Finally, the Court limited its decision to a determination of age under the Juvenile Act and said, "[f]or purposes of the Act, an individual becomes a year older on the day of his birthday and not the day before." *Id.*

¶ 16 In 1972, almost 30 years before *Iafrate II,* the legislature enacted the rule for computation of time which excludes the first day and includes the last as part of the statutory construction act. "When any period of time is referred to in any statute, such period in all cases, ... shall be computed as to exclude the first and include the last day of such period." 1 Pa.C.S.A. § 1908, **Computation of time.** Admittedly, there is further amplification in section 1908, providing for an additional day(s) when the last day of computation falls on a Saturday, Sunday or legal holiday of the Commonwealth. Rather than the calculation of anniversaries, it is clearly evident these additional days were intended by the legislature to allow for adequate notice and business calculations and to provide accommodation to business and legal proceedings. This interpretation necessarily follows in order to give logical effect to *all* of the statute's provisions in accordance with 1 Pa.C.S.A. § 1921, **Legislative intent controls.**

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all of its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit the intention of the General Assembly may be ascertained by considering, among other matters:

1) The occasion and necessity for the statute.

. . .

3) The mischief to be remedied.

4) The object to be attained;

5) The former law, if any, including other statutes upon the same or similar subjects.

. . .

¶ 17 Accordingly, while section 1908 alone is not necessarily and specifically controlling, when read in conjunction with other statutes and caselaw, we conclude the section provides support for the rational conclusion that one achieves the completion of a year of one's life on the anniversary of birth, not the day before.

¶ 18 Pursuant to section 1921, we must look to the occasion and necessity for the statute among other considerations—the mischief to be remedied, the object to be attained, the former law, if any, including other statutes upon the same or similar subjects. This section, perhaps more than any other of the Statutory Construction Act, sharpens the implication that the statute creating the criminal charges under appeal must be construed to provide maximum protection to children 16 and under, maximum interception and assurance of trial for adult perpetrators of child sexual assault, the greatest attainment of protection of society against child sexual predators, and the merging of these efforts and provisions with the juvenile law, Megan's Law, and child pornography and child sexual solicitation laws which have evolved between the enactment of the Juvenile Act in 1903 and the most recent laws protecting children against child predators.

¶ 19 In further defining statutory construction and the inferred legislative intent, section 1922, **Presumptions in ascertaining legislative intent,** states:

> In ascertaining the intention of the General Assembly in enactment of a statute, the following presumptions, among others. may be used:
>
> > (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

Additionally, section 1903 of the Rules of Statutory Construction mandates the interpretation of words and phrases. "Words and phrases shall be construed according to rules of grammar and according to their common and apparent usage...." 1 Pa.C.S.A. § 1903, **Words and phrases** (a).

¶ 20 Taking into consideration the above-referenced statutes as well as the legislative direction as to the interpretation and construction of statutes, we find that both the intended application of the Statutory Construction Act and the law at issue in this appeal are manifestly evident. In applying those provisions of the Statutory Construction Act to the language of the criminal statutes on which basis appellant has been convicted, we conclude the single issue before us, regarding the age of the victim at the time the offenses were committed, must be resolved against appellant and in favor of the Commonwealth.

¶ 21 As detailed above, section 1908 clearly provides that the date of birth is determined by the anniversary date and not, as common law would provide, the day before the anniversary. This is so because the Statutory Construction Act did not refer to the common law fiction as an exception to time of anniversary date when it legislated the computation of time in section 1908. We agree with the Commonwealth's analysis that the legislature was obviously aware of the common law rule but must have intentionally omitted it. *See* Appellee's brief at 5.

¶ 22 The Commonwealth cites the Supreme Court's decision in *Iafrate II, supra,* as the polestar of how to determine the age of the victim of a crime, the age being an essential element of statutory sexual assault and aggravated indecent assault of a person less than 16 years of age, the crimes with which appellant was charged. The Commonwealth analogizes,

> [T]he sections of the Juvenile Act discussed in *Iafrate* are significant to this pending action. Section 6322(a) provides that "if it appears to the court in a criminal proceeding that the defendant is a child, this chapter shall immediately become applicable...." 42 Pa.C.S.A. § 6322(a). As defined by the statute, a child is "an individual who is under the age of 18 years." 42 Pa.C.S.A. § 6302(1). Because that statute, like ours, is silent with respect to the method

of computing the age of an individual, reference to the Statutory Construction Act of 1972 is appropriate. *Iafrate,* 527 Pa. at 501, 594 A.2d at 295.

The common term in the Juvenile Act and the sexual assault statutes at issue here is "under the age of...." Rule 1903 of the rules of Statutory Construction deals with the interpretation of words and phrases. "Words and phrases shall be construed according to their common and approved usage ..." 1 Pa. C.S.A. § 1903(a). The terminology "under the age of ..." or "less than ... years of age" should be treated alike in both types of statutes, according to their common and approve usage.

Although the *Iafrate* Court restricted its decision as applying to the Juvenile Act above, noting the significance of it being rehabilitative as opposed to penal, its reasoning is based on the common usage of the term "is under" a certain age. That Court specifically stated: "It is manifestly clear to us that in common usage a person 'is under' a certain age until the anniversary date of the person's birth date." 527 Pa. at 501, 594 A.2d at 295.

Appellee's brief at 5.

¶ 23 The *Iafrate II* Court pointed to 1 Pa.C.S.A. § 1921(c)(1)-(4) *supra,* stating that one of the specific goals of the Juvenile Act is to provide for the care, protection and wholesome mental and physical development of children coming within provisions of the chapter." *Id.* at 500, 594 A.2d at 295. Accordingly, the Court determined that juvenile offenders are to be protected until the eighteenth anniversary of the date of birth, not just until the day before. This discussion is relevant to consideration of "other statutes upon the same or similar subjects" under section 1921(c)(5), *supra,* when ascertaining legislative intent.

¶ 24 Time, circumstances and the needs of society and protection of children require, if not demand, a different treatment of children as to horrendous offenses that were indistinguishable as to age between children at an earlier time and, in deed, pursuant to common law doctrines. When the legislature establishes a distinction between child victims and adults and in the process implements a dichotomy based upon age, the absence of reference to the common law computation of "birth date", which is not in keeping with common understanding of the anniversary date in numerous statutes, publications and judicial determinations, inherently establishes the common usage as the basis for creating the determination of the child's age, which is the anniversary date of the birth. We recognize appellant's position that for most purposes penal statutes are to be strictly construed, *see* 1 Pa.C.S.A. § 1928(b)(1), Penal Provisions. However, that same statute also provides: **Rule of strict and liberal construction,** "(a) The rule that statutes in derogation of the common law are to be strictly construed, shall have no application to the statutes of this Commonwealth enacted finally after September 1, 1937." 1 Pa.C.S.A. § 1928(a). Thus, subsection (a), in effect, creates a blanket rule for more liberal treatment of statutes created and effective after September 1, 1937. This is clearly delineated in section 1928(c) which provides:

(c) All other provisions of a statute shall be liberally construed to effect their objects and to promote justice.

¶ 25 This analysis can be supported further by our holding in *Commonwealth v. Nernberg,* 402 Pa.Super. 411, 587 A.2d 317 (1991).

An Act of Assembly which imposes penal sanctions for violation of its provisions must be strictly construed.... However, strict construction

does not require that the words of a criminal statute be given their narrowest meaning or that the legislature's evident intent be disregarded. In attempting to ascertain the meaning of the statute, we are required to consider the intent of the legislature and are permitted to examine the practical consequences of a particular interpretation. We are to presume the legislature did not intend a result which is absurd or unreasonable.

*Id.* at 318 (citations and quotations omitted). The words of *Nernberg* are consistent with 1 Pa.C.S.A § 1922, **Presumptions in ascertaining legislative intent:**

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

. . .

(4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.

(5) That the General Assembly intends to favor the public interest as against any private interest.

¶ 26 The balance between strict construction of penal statutes and other related statutes, which can be more liberally construed, is exhibited in *Iafrate II, supra.* It is essential that child victims of sexual assault receive the same protection as that provided to juvenile offenders in *Iafrate II,* as the goal of the statutes subject of our consideration, like the Juvenile Act, is the care and protection of the child.

¶ 27 The following cases established the parameters for juvenile justice in the United States. *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), held children in Juvenile Courts are not required to be processed as adults but do have rights of confrontation, to remain si-

lent, and to be represented by counsel. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), held that proof beyond a reasonable doubt is required in all delinquent cases, and *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), established that due process for a child in a juvenile delinquency proceeding does not require a jury trial, which would in fact delay justice in the juvenile proceeding and diminish the need to have it separate from the adult criminal system.

¶ 28 Thus, it may be observed that the need for parallel and inseparable standards between adult penal statutes and proceedings and child protective proceedings has not been determined by the United States Supreme Court to be mandated. It can thereby be inferred that the Pennsylvania Supreme Court in *Iafrate II, supra,* employed the same balancing test to assuring children the maximum rights in a proceeding, *whether as victim or defendant, without causing greater harm to the child victim by assessing a superior right to the adult, criminal perpetrator as would the common law rule of determining age.*

¶ 29 Long before *Iafrate,* the Pennsylvania Supreme Court in *Commonwealth v. Fisher,* 213 Pa. 48, 62 A. 198 (1905), which declared the Juvenile Act to be valid, made clear that children are in a special class. In the Court's Opinion Justice Brown calls attention to the fact that the protecting arm of the act is for all who have not attained 16 years of age, and who may need its protection.

That minors may be classified for their best interests and the public welfare has never been questioned in the legislation relating to them. Under the act of 1887, the classification of females under 16 years of age means felonious rape, with its severe penalties for what may be

done one day, though on the next it remains simple fornication, to be expiated by a mere fine. Other acts forbid the employment of minors under 12 years of age in mills; of any boy under 14, or any female, in anthracite coal mines; of minors under 14 in and about elevators; of a boy under 12, or any female in bituminous coal mines. Others make it a misdemeanor to furnish intoxicating drinks, by sale, gift, or otherwise, to one under 21, and forbid the admission of any minor in certain places of amusement. Such classification is not prohibited by the Constitution, and what has not been therein prohibited the Legislature may enact.

*Id.* at 199. For the proper enforcement of these long standing statutes and more recent ones dealing with the age of minors, such as the statutes considered herein, it is crucial that the common sense anniversary rule be applied.

¶ 30 This common sense application is particularly relevant to section 3121(c) of Pennsylvania's rape statute which specifically categorizes as **Rape of a child,** sexual intercourse with a complainant who is less than 13 years of age. It is ludicrous to suggest that the legislature of this Commonwealth, who enacted a statute to protect children from sexual aggressors and that is dependent upon the age of the particular victim for its enforcement, intended that for purposes of the statute, child victims would turn 13 the day before their 13th birthdays.

¶ 31 When a common law rule, in effect, would pervert justice and contravene legislative and societal needs, and it is not in the best interests of justice or public policy, a change by the court is mandated.

¶ 32 It is also important to point out that despite being somewhat in conflict with this Court's holding in *Iafrate I,* on which allocatur already had been granted by our Supreme Court, this Court sitting *en banc*

distinguished *Iafrate I* in *Herr v. Booten,* 398 Pa.Super. 166, 580 A.2d 1115 (1990) (*en banc*). The *Herr* Court clarified the common sense notion of the anniversary of one's birthday being the date on which a given age is reached. While we acknowledged the common law rule that one is deemed to attain a given age on the day before one's birthday, this Court found the rule was not relevant in the proper construction of 18 Pa.C.S.A. § 6308, **Purchase, consumption, possession or transportation of liquor or malt or brewed beverages,** and § 6310.1, **Selling or furnishing liquor or malt or brewed beverages to minors,** of the Crimes Code, as the legislature, pursuant to 1 Pa.C.S.A. § 1921, *supra,* did not intend a result that was absurd. Accordingly, the *Herr* Court concluded a person turns 21 on the day of his 21st birthday and that furnishing alcohol to the decedent on the day prior to his birthday amounted to negligence per se.

¶ 33 The same result would apply to 18 Pa.C.S.A. § 6110.1, **Possession of firearm by minor,** which, subject to specific exceptions, prohibits possession or transportation of a firearm by a minor, a person under 18 years of age. Since the Supreme Court in *Iafrate II* determined a person becomes an adult on the 18th anniversary of his birth date, it is only logical to conclude that a person remains a minor until his 18th birthday. Subject to the specified exceptions, therefore, a person generally is not permitted to possess a firearm until his 18th birthday, and not the day before.

¶ 34 Although neither penal nor rehabilitative in nature, the same logic applies to the Election Code, 25 P.S. Chapter 14. Section 2811, **Qualifications of electors,** entitles "every citizen of this Commonwealth eighteen years of age" and possessing certain stated qualifications to vote at all elections. *Id.* There is no exception

permitting one to vote on the eve of his 18th birthday.

¶ 35 Analogously, in *Commonwealth v. Albert*, 563 Pa. 133, 758 A.2d 1149 (2000), ten years after *Herr* and nine years after the Court's decision in *Iafrate II*, the Supreme Court concluded the age classifications in the Commonwealth's statutory sexual assault, involuntary deviate sexual intercourse, aggravated indecent assault and indecent assault statutes did not violate the equal protection clauses of the federal and state constitutions since they served the legitimate state interest of protecting minors under 16 years of age. The Court reasoned,

> Such an interest recognizes that older, more mature individuals are in a position that would allow them to take advantage of the immaturity and poor judgment of very young minors. Moreover, we believe that the subject legislation is reasonably related to accomplishing such interest. The legislation is specifically tailored to prevent older teens and adults from preying upon very young minor victims. . . .

*Albert* at 1154.

■ ¶ 36 Turning to the statutory sexual assault statute now subject of our consideration, a logical application of the statutory construction act, detailed above, becomes abundantly clear. Except as provided in the rape statute, section 3122.1, *supra*, provides that "a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant under the age

of 16 years and that person is four or more years older than the complainant" and the two are not married to each other. *Id.* The aggravated indecent assault statute, section 3125(a)(8), *supra*, prohibits engaging "in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith, medical, hygienic or law enforcement procedures" if "the complainant is less than 16 years of age and the person is four or more years older than the complainant" and the two are not married to each other. *Id.* The legitimate state interest of these statutes, as confirmed by our Supreme Court in *Albert*, *supra* at 1154, is "to protect minors younger than 16 years of age from older teenage and adult sexual aggressors." This lawful and justifiable concern *demands that this Court extend such protection until the day of a child's 16th birthday*. Any result to the contrary is absurd.

¶ 37 The impact of the application of the anniversary date of birth to the statutes under consideration, as opposed to the common law date, is clearly to implement the statutory construction rules to modern reality and to avoid results which are absurd, impossible of execution or unreasonable. *See* 1 Pa.C.S.A. § 1921, *supra*. The common law rule is subject to change and has in fact been modified in several jurisdictions where it had been in effect.[5]

¶ 38 In summation, the effect of using the common law rule to determine age would be to provide the criminal wrongdoer a pass on the extreme harm perpe-

---

5. In *State v. Hansen*, 304 Or. 169, 743 P.2d 157 (1987), the Supreme Court of Oregon found that the popular method, rather than the common law method, of computing age should apply when a victim was raped the day before her 16th birthday. Accordingly, the accused properly could be convicted of deviate sexual intercourse with a child less than

16 years of age. In Kentucky a person who is less than 16 years old is deemed incapable of giving consent to certain sexual offenses and a person is "less than 16 years old" the day before his 16th birthday. *See* Kentucky Penal Code, Chapter 510; KRS 510.020(3)(a), KRS 510.020 Commentary.

trated against a child by the medieval fiction that a child reaches 16 years of age the day before his birthday for penal law purposes. The common law would perpetuate the injustice upon children which the law and society have expended great legislative and social energies to correct. To apply common law under these circumstances would nullify years of caselaw, require the rewriting of numerous Pennsylvania statutes, and change traditional milestones in life.

¶ 39 For the above reasons, we conclude a person reaches a given age on the anniversary of birth, that is, on his or her birthday.

¶ 40 Judgment of sentence affirmed.

¶ 41 BENDER, J., files a Dissenting Opinion.

### DISSENTING OPINION BY BENDER, J.:

¶ 1 The question before this Court is whether a common law rule that holds that one reaches a designated age not on the anniversary of one's birth, as common contemporary custom has it, but instead the day before, should be applied to the sexual assault statutes. While the Majority provides an interesting historical perspective of the common law rule in question, and provides an impassioned plea and policy argument for why the common law rule should not be applied in the present case, the Majority's disposition ignores critical aspects of the key decision in *Commonwealth v. Iafrate*, 527 Pa. 497, 594 A.2d 293 (1991), and also contravenes the rule of statutory construction requiring a strict construction of penal provisions. Thus, I dissent.

¶ 2 In the portion of the Majority's Opinion devoted to legal analysis, the Majority cites to the Statutory Construction Act's computation of time section, the section regarding presumptions in ascertaining legislative intent, the words and phrases section and common understanding/usage/custom, and concludes that the issue before us must be resolved against Appellant and in favor of the Commonwealth.

¶ 3 With respect to the computation of time section of the Statutory Construction Act, the Majority states "section 1908 clearly provides that the date of birth is determined by the anniversary date and not, as common law would provide, the day before." Majority Opinion at 1205. This is a rather remarkable assertion inasmuch as neither the words "age," "date of birth," "birthday," nor "birth date" appear in section 1908. The text of section 1908 provides as follows:

### § 1908. Computation of time

When any period of time is referred to in any statute, such period in all cases, except as otherwise provided in section 1909 of this title (relating to publication for successive weeks) and section 1910 of this title (relating to computation of months) shall be so computed as to exclude the first and include the last day of such period. Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.

1 Pa.C.S. § 1908. A review of the text of section 1908 reveals that the section does not explicitly apply to the determination of age. Thus, the Majority makes a broad statement when it contends that section 1908 **clearly** provides that the date of birth is determined by the anniversary date.

¶ 4 A review of section 1908 reveals that, contrary to the Majority's assertion, the section most rationally relates to provisions for the filing of documents or computing deadlines and/or statutes of limitation. How can this be discerned? The above premise is discernible from the section's language regarding the omission of

Saturdays, Sundays or holidays. Literally read, for purposes of computing time, section 1908 excludes the last day if the day falls on a Saturday or a Sunday. This language strongly suggests that the section is meant to control deadlines for taking action.

¶ 5 Indeed, literal application of this section would mean that if one's "birthday" fell on a weekend or holiday, for legal purposes one would remain the younger age until either Monday or the next business day. In point of fact, following section 1908 as it applies to birthdays would mean that bars that serve patrons on the 21st anniversary of their birth would violate the law if the 21st anniversary of birth fell on a Saturday, Sunday or a court holiday. The same result would occur for a store that sold cigarettes to a person turning 18 on a weekend or holiday. Does this make any sense? Viewing section 1908 in context reveals that extending a period of time to the next business day certainly is rational with respect to determining when a document is required to be filed or a limitations period runs, but has no rationality when construing when an individual becomes legally capable of purchasing cigarettes, alcohol or consenting to sexual activity. Clearly, when the whole of section 1908 is considered, there is no logical basis for pointing to that section as controlling the question before this Court.

¶ 6 The Majority seemingly accounts for this anomaly by stating, with regard to the provisions excluding weekends and holidays, "rather than the calculation of anniversaries, it is clearly evident that these additional days were intended by the legislature to allow for adequate notice and business calculations and to provide accommodation to business and legal proceedings." Majority Opinion at 1204. The Majority would seemingly not apply the weekend and holiday provisions to the determination of one's age because it is "clearly evident" that those provisions apply to business and legal proceedings. The question is, how is it clearly evident that those provisions apply only to some calculations of time and not others? Just as section 1908 does not specifically apply to calculations of age or birth dates, the language of the provision does not provide for any exclusions in its application. Thus, if reviewed in an objective fashion, the most that can be said about section 1908 is that it is uncertain whether it was meant to apply to the calculation of age.

¶ 7 The Majority next asserts that the legislature was obviously aware of the common law rule but must have intentionally omitted it from the Section 1908 so as to defeat its continuing application to determining one's age. Majority Opinion at 1205. The Majority's assertion is logically flawed in two respects. First, if it were truly the legislature's intent to exclude the common law rule, the most unequivocal way to express this intent would be to explicitly exclude it, not to simply omit it from the text. Second, the Majority infers a positive intent from a negative, *i.e.,* a non-action. Contrary to the Majority's assertion, the failure to mention the common law rule entirely does not prove a positive intent to exclude the rule. Rather, it leaves the question unresolved and leaves open the possibility that the common law rule was never even considered in the first place, let alone considered and rejected. Again, an unbiased review of this section does little to resolve the interpretative puzzle provided by this case.

¶ 8 Lastly, the Majority points to the Supreme Court's conclusion that the common law rule should not be applied to the provisions of the Juvenile Act in *Commonwealth v. Iafrate,* 527 Pa. 497, 594 A.2d 293 (1991), as an additional basis for doing the same here. This reliance is where the Majority makes its largest analytical mis-

take as the Majority fails to heed the approach utilized by the Supreme Court in solving the interpretative puzzle presented by this case. Indeed, given the Supreme Court's discussion of this issue in *Iafrate*, this case is not as much about statutory interpretation as it is about interpreting a leading case on the matter issued by a higher authority than this Court.

¶ 9 In *Iafrate*, our Supreme Court was called upon to determine whether, for purposes of the Juvenile Act, one turned 18 on the 18th anniversary date of one's birth or the day before, as dictated by the common law rule. While the Supreme Court ultimately concluded that one turned 18 for purposes of the Juvenile Act on the anniversary date, as opposed to the day before, the language used by the Court, and the methodology employed in reaching their decision, compels a conclusion opposite to the one reached by the Majority.

¶ 10 Importantly, after acknowledging that Pennsylvania's juvenile justice system is primarily rehabilitative in nature, the Court's detailed analysis of the issue began with recognition that the Juvenile Act was silent with respect to the method of computing the age of an individual, thus, requiring interpretative efforts. Notably, after acknowledging the statute's silence on the matter, the Court did not simply refer to the Statutory Construction Act's section relating to computation of time and end its analysis with citation to the provisions of that section. Similarly, despite acknowledging the common conception was that one was under an age until the anniversary date of the person's birth, it did not simply accept the common custom as controlling. Instead, although the Court referenced the Statutory Construction Act, it looked at broader principles of statutory construction embodied within that Act. Considering that the Juvenile Act is rehabilitative in nature, the Court concluded that an interpretation that made the benefits of the Act

more extensive was consistent with the interpretative principle that "all but certain classes of statutes 'shall be liberally construed to effect their objects and to promote justice.' 1 Pa.C.S. § 1928(c)." *Iafrate*, 527 Pa. at 501, 594 A.2d at 295. However, it is the next portion of the Court's analysis that is particularly germane to the analysis here. Immediately after citing the principle that all but certain classes of statutes "shall be liberally construed to effect their objects and to promote justice," *id.*, the Court pointed out the class of statute to which the general rule does not apply, stating:

> Conversely, since the Crimes Code is obviously penal in nature, its application should be strictly construed against the party seeking enforcement and in favor of the defendant. 1 Pa.C.S. § 1928(b)(1).

*Id.* (footnote omitted). If the importance of including this sentence, and its juxtaposition next to the preceding statement, happened to be lost upon readers, the Court seemingly hammered home the nature of its ruling when it stated, "[f]inally, our decision today is limited to a determination of age under our Juvenile Act. For purposes of the Act, an individual becomes a year older on the day of his birthday and not the day before." *Id.*

¶ 11 By explicitly limiting its holding to the Juvenile Act, and in pointing out the contrasting principle of strict construction of penal statutes, the Supreme Court appeared to be laying a prospective analytical framework for analyzing a case that had yet to be decided involving application to various offenses contained in the Crimes Code. Today, in the present case, we are presented with that very circumstance. Since in this case we are dealing with a penal statute, the general principles of statutory construction relied upon by the Supreme Court in *Iafrate* dictate a narrow or strict construction of the issue of age determination. In this context, that

means that the common law rule, which favors the criminal defendant, must be relied upon unless the legislature explicitly dictates a different method of computation.

¶ 12 Although reaching the opposite interpretation as that reached in *Iafrate,* reference to controlling principles of statutory construction reveals that the opposite results are actually in harmony with the controlling principle. In *Iafrate,* the construction that favored the criminal defendant was a liberal one, which expanded by one day the reach of the Juvenile Act, thus providing the defendant the more lenient provisions found under that Act. Here, since we are dealing with a penal statute, the construction that favors the criminal defendant is a strict one, the construction that reduces by one day the exposure to criminal sanction for engaging in consensual sexual conduct with a person under the age of legal consent. In effect, both constructions follow the principle that the statute must be construed in favor of the defendant and against the party seeking enforcement of the statute which, of course, is the Commonwealth.

¶ 13 The Majority essentially eschews the points made by our Supreme Court in analyzing the issue before us, and conveniently so, as doing so allows the Majority to reach the destination their policy considerations predestine as a resolution of the matter. As with the Juvenile Act, the provisions in the Crimes Code dealing with statutory sexual assault, IDSI and indecent contact do not set forth the methodology for determining age. When confronted with this fact, the Supreme Court concluded this absence left the matter open to interpretation. The Majority, in relying upon Section 1908 finds clarity in that section where our Supreme Court did not and finds it applicable here even though our Supreme Court did not. In relying upon common custom, the Majority accords that factor weight our Supreme

Court did not. Indeed, had the Supreme Court chosen to, it could have simply said "of course, one turns a given age on the anniversary of their birth, not the day before." Instead, the Supreme Court acknowledged that the statute's failure to set forth the methodology for computing age left the common law rule at issue. In *Iafrate,* the principles of statutory construction, *i.e.,* liberal construction, dictated a rejection of the common law rule so as to expand the protections of the Juvenile Act. Here, as we are dealing with a penal provision, the paramount rule of statutory construction, that penal provisions are to be strictly construed, command the opposite. The Supreme Court recognized this dichotomy, which is why they did not simply espouse a one-size-fits-all rule.

¶ 14 The Majority sidesteps the approach utilized in *Iafrate* because it apparently feels compelled to offer an interpretation that favors to the maximum degree the interests of society in protecting minors even if it means ignoring a fundamental principle of statutory construction within the realm of criminal law. The Majority creates a compelling argument and, while I certainly favor protecting minors, I am unwilling to eschew long established rules of statutory construction to extend the scope of a penal provision a few more hours when it is clear that the length of the protection is essentially an arbitrary choice. In the court of public opinion, Appellant might rightfully be condemned as a "sleazeball" for his actions. In a court of law, however, Appellant is supposed to be deserving of the protections afforded all Americans, one of which compels the strict construction of penal provisions. Instead of adhering to this principle, the Majority utilizes a principle of broad construction. Thus, I dissent.